JOHN H. WATSON, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53414. Promulgated December 29, 1932.

*Robert W. Wheeler, Esq.*, for the petitioner.
*Dean Kimball, Esq.*, and *E. C. Adams, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: This proceeding was brought for the redetermination of a deficiency in income tax for the year 1928 amounting to $759.89. By his amended answer the respondent alleges that the deficiency is

the sum of $1,243.51 instead of $759.89, shown in the notice of deficiency, and requests that the deficiency be so redetermined.

A stipulation of facts was entered into by the parties disposing of all the issues except two, stated as follows:

(a) Whether the loss of $984.38 sustained by the petitioner in the year 1928, as hereinafter set forth, is a capital loss or an ordinary loss.

(b) Whether or not a contribution of $25 made by the petitioner in the year 1928 to the Citizens League of Cleveland is deductible from gross income in computing the petitioner's taxable net income.

The facts were stipulated substantially as follows:

In the year 1928 the United States of America paid at maturity to the petitioner the principal sum, aggregating $76,000, of certain United States Liberty Loan Bonds, for which the petitioner paid the sum of $76,984.38 and which had been held by the petitioner for more than two years prior to such payment, resulting in a loss to the petitioner of $984.38.

The petitioner in 1928 contributed the sum of $25 to the Citizens League of Cleveland.

In relation to the first issue the parties agree that the Liberty bonds were capital assets, but the petitioner contends that the loss sustained by him upon the payment of the bonds at their maturity was an ordinary loss, while the respondent contends that it was a capital loss within the provisions of section 101 of the Revenue Act of 1928. That section provides in part as follows:

(c) *Definitions.*—For the purposes of this title—

\* \* \* \* \* \* \*

(2) " Capital loss " means deductible loss resulting from the sale or exchange of capital assets.

The respondent relies on *Henry P. Werner*, 15 B. T. A. 482, where the Board held that gain realized when certain bonds were called and paid prior to maturity was a capital gain under provisions of law identical with those here under consideration.

Prior to the *Werner* case the Commissioner's interpretation of section 206 of the Revenue Act of 1921 had read, " when an obligation matures it is neither sold nor exchanged. Any taxable profit derived upon maturity of a non-interest bearing obligation is, therefore, not ' capital gain ' derived from the sale or exchange of capital assets and section 206 does not apply." (I. T. 1637.) After the promulgation of the *Werner* case the Commissioner, in I. T. 2488, revoked I. T. 1637 and provided, " the net gain from bonds held for more than two years, whether received as the result of the maturity of the bonds or as the result of their redemption before maturity

may, at the option of a taxpayer other than a corporation, be taxed under the provisions of section 206 of the Revenue Act of 1921." The ruling was made applicable also to the provisions of the Revenue Acts of 1924, 1926 and 1928.

The Board, in *Henry P. Werner, supra*, held that the redemption of the bonds prior to maturity constituted a sale or exchange within the meaning of section 206 of the Revenue Act of 1921. This holding was predicated on the conclusion that such a redemption of bonds " was in effect a compulsory sale thereof." In the consideration of the matter the opinion indicates that resort was had to the Congressional Committee's reports, in which it was stated that the provision was intended to apply to the " sale or other disposition of capital assets " and we thereupon observed that " certainly the transaction before us comes within these broad terms."

On further consideration we are of the opinion that the Board erred in its holding in *Henry P. Werner, supra*. It is elemental that where a statute is clear and unambiguous in its terms and provisions resort should not be had to legislative history to determine the limits of its compass. The statute in question is so simple in construction and so clear in meaning that it justifies no resort to the Congressional Committee's reports as an aid in the interpretation thereof.

The words " sale or exchange " are ordinary words of well established meaning. Taken in their context they are susceptible of no misconstruction. Payment of the amounts specified in the bonds, either at maturity or pursuant to an authorized call prior to maturity, is not a " sale or exchange " of such bonds. It is merely the payment of an obligation according to its fixed terms. For these reasons we believe the decision in *Henry P. Werner, supra*, was erroneous and it is accordingly overruled.

In the instant case there was neither a " sale " nor an " exchange " of a capital asset when the Liberty bonds were paid at maturity. There was the satisfaction of an obligation of the United States by payment. Loss incurred or gain realized in such a transaction is not a capital loss or a capital gain under the definition found in the statute.

Following the same thought further we are of the opinion that I. T. 1637 correctly interpreted section 206 of the Revenue Act of 1921 and corresponding provisions of the later acts and that I. T. 2488, which went even further than the *Werner* case, is an erroneous interpretation.

The second issue is whether or not a contribution made by the petitioner to the Citizens League of Cleveland is deductible from gross income.

The constitution of the Citizens League of Cleveland, which was introduced in evidence at the hearing, states the objects of the organization as follows:

To promote businesslike, honest and efficient conduct of local government;

To investigate the administration of local offices and the operation of local laws;

To collect and disseminate information relative to local and state government and the conduct of public officials;

To induce citizens to take a more active interest in the affairs of government;

To encourage competent men and women to stand for public office; and to support wholesome leadership in public affairs.

No part of the net earnings of the League inure to the benefit of any private stockholder or individual. In carrying out its objects the League made investigations and researches with respect to civic, social and economic problems, disseminating the results of the investigations among its contributors and the public. The League sent bulletins containing the results of its investigations to all its contributors and published them in the newspapers of Cleveland, sometimes as news and sometimes as paid advertisements. The League investigated candidates for office and classified such candidates as " preferred " or " qualified " or " not recommended." The League, when it was considered desirable, advocated the amendment of existing laws and its agents presented its recommendations in that respect to the proper legislative body.

Section 23 of the Revenue Act of 1928 reads in part as follows:

In computing net income there shall be allowed as deductions:

\*       \*       \*       \*       \*       \*       \*

(n) *Charitable and other contributions.*—In the case of an individual, contributions or gifts made within the taxable year to or for the use of:

\*       \*       \*       \*       \*       \*       ,\*

(2) Any corporation or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

The statute grants the right of deduction of a contribution in a case where a corporation is " organized and operated exclusively for   \*   \*   \*   educational purposes." Though the statute employs no words which are not in common use, the drawing of the precise line of demarcation between activities which are exclusively educational and those which are not is a difficult task. The formulation of a self-executing definition of the word " educational," one patently applicable in all instances, is perhaps impossible.

The Circuit Court of Appeals for the Second Circuit, in *Weyl* v. *Commissioner*, 48 Fed. (2d) 811, observes that " it is clear that

\* \* \* Congress did not intend to use the word 'educational' in the statute in any exceptional sense but [in] its plain ordinary meaning \* \* \*." The court quoted with apparent approval a dictionary definition which rejected the older concept of education as limited to instruction and adopted one which embraces all forms of human experience, thereupon approving the deduction of a contribution to the League for Industrial Democracy, which "makes researches, gives lectures, holds debates and discussions, promoted by writing pamphlets, books and helping to distribute them, giving information concerning economic and social problems."

The same court, in *Leubscher* v. *Commissioner*, 54 Fed. (2d) 998 (affirming 21 B. T. A. 1022), denied the deduction of a contribution to a club organized " to advocate the Henry George doctrine " and promote social intercourse " among single tax people." Here the court pointed to the accepted definition of the word " advocate," which reads, " to plead in favor of, to defend by argument before a tribunal or the public, to support, vindicate or recommend publicly." In the same case the court approved the deduction of a legacy to a foundation the money to be used in teaching, expounding and propagating the ideas of Henry George. The court observed " the money was to be used for teaching, expounding and propagating, not for seeking the passage of legislation."

In an earlier case, *Slee* v. *Commissioner*, 42 Fed. (2d) 184 (affirming 15 B. T. A. 710), the same court stated: " Political agitation as such is outside the statute, however innocent the aim \* \* \*. Controversies of that sort must be conducted without public subvention \* \* \*. Nevertheless there are many charitable, literary and scientific ventures that as an incident to their success require changes in the law. \* \* \*. All such activities [instances cited] are mediate to the primary purpose, and would not, we should think, unclass the promoters. The agitation is ancillary to the end in chief, which remains the exclusive purpose of the association."

Education in its proper sense is not the blind acceptance of fixed concepts. It implies the idea of growth. Nor, as we view it, is it essential, in order to constitute an educational purpose, that the subject of interest be free from controversy. Indeed, it is possible that education often thrives best in an atmosphere of controversy.

It is difficult to conceive a field more subject to controversy than that of electoral and municipal reform. Every candidate who offers himself has his enthusiastic friends and supporters who honestly think their candidate the best fitted for the office sought. Every philosophy and theory of government has its protagonists and attracts its followers. Yet we would not be heard to say that there may not be organizations exclusively devoted to the purposes of

education in the electoral and municipal field. See *Charles W. Dahlinger*, 20 B. T. A. 176; affd., 51 Fed. (2d) 662; certiorari denied, 284 U. S. 673. Nor would we say that the popularity of a cause or the soundness of the philosophy of government proposed are proper tests of educational purpose.

In the instant case the members of the League would perhaps paraphrase the purpose of the League as "the bringing about of better local government and the election of better fitted men to office." But in the very statement they assume the soundness of their conclusions and the accuracy of their judgment of fitness. Furthermore, they impute that those not in agreement with the League are mistaken in their philosophy and unsound in their judgment. Any organization such as that under consideration is obviously partisan in the broad sense of that term. It has its own concept of what constitutes good government and its own criteria by which to judge candidates for office, and it suggests its conclusions to others. To this extent it is an advocate. And though advocacy may be but a natural expression of sincerity of belief, it also tends to indicate the point at which education ends and, in this case, political activity begins.

On the facts before us we are not convinced that the Citizens League of Cleveland was organized and operated exclusively for educational purposes. The classification of candidates and the publishing as paid advertisements of such classification went beyond the education of the public. The obvious purpose of such advertisements was to promote the election of "preferred" candidates. This was a political activity, however laudable the aim in the opinion of the members of the League. Similarly, the League presented its conclusions and, by proper inference, it recommended actions to the legislative authority. Here again it assumed the rôle of an advocate in political matters.

We conclude that a contribution to the League is not a deductible contribution under the statute. *Herbert E. Fales*, 9 B. T. A. 828; *Joseph M. Price*, 12 B. T. A. 1186, and cases above cited. The facts do not bring the case within the limits of I. T. 2654, promulgated by the respondent November 7, 1932, and cited by the petitioner.

It is stipulated, with relation to the issues in this proceeding which are not herein discussed but which were settled by stipulation, that the sum of $386.47 is to be added to the petitioner's capital net gain as computed by the respondent and that the sum of $946.98 is to be deducted from the petitioner's ordinary income as shown in the notice of deficiency herein involved.

Reviewed by the Board.

*Decision will be entered under Rule 50.*