PROVIDENT TRUST COMPANY OF PHILADELPHIA, EXECUTOR OF THE ESTATE OF OWEN OSBORNE, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59957.   Promulgated November 21, 1933.

*Albert S. Lisenby, Esq.*, for the petitioner.

*William E. Davis, Esq.*, and *Paul Waring, Esq.*, for the respondent.

OPINION.

ARUNDELL: The respondent determined a deficiency in income tax of the decedent for the period in 1929 from January 1 to November 18, the date of death, in the amount of $52,788.71. The deficiency arises out of respondent's application of section 44 (d) of the Revenue Act of 1928 to installment obligations owned by the decedent at the time of death. That is, he determined that gain resulted from the transmission of the installment obligations upon the death of decedent.

We adopt as our findings of fact the stipulation filed by the parties. The stipulation shows that subsequent to March 1, 1913, but more than two years prior to January 1, 1927, the decedent, Owen Osborne, purchased four tracts of land at a total cost of $212,929. He sold one tract in 1927 and the other three in 1928. In each case the initial payment was less than 40 percent of the selling price, and for the balance he received installment obligations of the purchasers. At the time of Osborne's death the face amount of such obligations was $612,000 and their fair market value was $391,680. For estate tax purposes the obligations were reported at their fair market value. The respondent, in computing the deficiency in income tax in dispute here, determined that the fair market value of the installment obligations was equal to their face value, $612,000. Error is now confessed in the use of this figure, the correct figure being as stipulated, $391,680.

All of the four tracts of land were " capital assets " within the purview of section 101 (c) (8) of the Revenue Act of 1928. The respondent's computation of tax was made at capital gain rates,

By amended answer it is alleged that this was erroneous and that the gain should be taxed at ordinary rates. An increase in the deficiency is requested based on the use of ordinary rates. It is stipulated that, in respect of the parcel of real estate sold in 1927, the installment obligations of the face value of $91,000—and fair market value of $58,240—were acquired by Osborne on August 27, 1927, and were owned continuously by him until his death on November 18, 1929; that he was not a dealer in such obligations and he did not hold them primarily for sale in the course of his trade or business.

The questions raised by the original pleadings have to do with the application of section 44 (d), petitioner contending that there was no transmission or disposition during the taxable period; that even if there were, no income was thereby realized by decedent and consequently there was nothing subject to the tax; and that section 44 (d) is invalid in attempting to impose a tax where there is no income. These contentions have been disposed of adversely to the petitioner in *Estate of Erskine M. Ross*, 29 B.T.A. 227, and on the authority of that case we hold the decedent realized income which was subject to tax.

The other question is whether the income was subject to tax at normal and surtax rates under sections 11 and 12 of the Revenue Act of 1928, or at the capital gain rate under section 101 (a) of that act.

The parties have stipulated that all four tracts of land were capital assets within the meaning of section 101 (c) (8) of the Revenue Act of 1928. This being so, the gain arising from the sale of that land would be subject to tax at the capital gain rate. The respondent's argument is that this question is governed by the decision in *John H. Watson, Jr.*, 27 B.T.A. 463, which holds that payment of Liberty bonds at maturity is not a sale or exchange within the capital gain and loss provisions of the statute. Stated otherwise, his position is that gain taxable under section 44 (d) arises from the installment obligations themselves, entirely separate and apart from the original installment sale in which the obligations were received. We do not view the matter in this way. The report of the Senate Committee on Finance in explanation of the purposes of section 44 (d), which was quoted at length in the *Ross* case, *supra*, reads in part as follows:

The installment basis accords the taxpayer the privilege of deferring the reporting at the time of sale of the gain realized, until such time as the deferred cash payments are made. To prevent the evasion the subsection terminates the privilege of longer deferring the profit if the seller at any time transmits, distributes, or disposes of the installment obligations and compels the seller at that time to report the deferred profits

In the light of this declared purpose in enacting the statute it is our view that the gain subject to tax on the death of the owner of installment obligations is the gain realized on the sale of the property in connection with which the installment obligations were received, and the taxation of which was merely deferred under the installment sales provisions of the taxing statute. Consequently, if the property sold was a capital asset, as is the case here, the gain is subject to tax at the capital gain rate. The respondent's request to have the gain computed at ordinary rates is accordingly denied.

*Decision will be entered under Rule 50.*