JAMES J. FORSTALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NELL LOTHROP FORSTALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 59388, 59389. Promulgated November 24, 1933.

*Frederick R. Gibbs, Esq.*, for the petitioners.
*Wilford H. Payne, Esq.*, for the respondent.

OPINION.

SEAWELL: Section 23 of the Revenue Act of 1928, to the extent material here, reads as follows:

In computing net income there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*     \*

(n) *Charitable and other contributions.*—In the case of an individual, contributions or gifts made within the taxable year to or for the use of:

\*     \*     \*     \*     \*     \*     \*

(2) any corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals,

*no part of the net earnings of which inures to the benefit of any private shareholder or individual.*

\*  \*  \*  \*  \*  \*  \*

The parties here stipulated that none of the funds of the Association inure to the benefit of any individual. They differ only as to whether the Association was organized and operated exclusively for educational purposes, no contention being made by the petitioners that it was organized and operated for any of the other purposes set forth in the statute.

In *Slee* v. *Commissioner*, 42 Fed. (2d) 184; affirming 15 B.T.A. 710, the court, in holding that a donation to the American Birth Control League was not deductible as a contribution to a charitable, scientific or educational association, said: " Political agitation as such is outside the statute, however innocent the aim. \* \* \* Controversies of that sort must be conducted without public subvention; the Treasury stands aside from them." Instances were given in which agitation for the repeal or passage of laws as an incident to the end sought would not take the association beyond the statute. In discussing the activities of the association before it, the court said:

\* \* \* So far, however, as its political activities were general, it seems to us, regardless of how much we might be in sympathy with them, that its purposes cannot be said to be " exclusively " charitable, educational or scientific. It may indeed be for the best interests of any community voluntarily to control the procreation of children, but the question before us is whether the statute covers efforts to proselytize in that or other causes. Of the purposes it defines " educational " comes the closest, and when people organize to secure the more general acceptance of beliefs which they think beneficial to the community at large, it is common enough to say that the public must be " educated " to their views. In a sense that is indeed true, but it would be a perversion to stretch the meaning of the statute to such cases; they are indistinguishable from societies to promote or defeat prohibition, to adhere to the League of Nations, to increase the Navy, or any other of the many causes in which ardent persons engage.

\* \* \* Indeed, were we in a position to pass upon the evidence de novo, we should be somewhat slow to believe that the ends proposed did not still include convincing Legislatures and other influential persons that it was desirable in the interests of the moral and social well-being of the community that all persons should be free to control the number of their children. However commendable this may be—and we mean to raise no question as to it—it is not in our judgment one of those purposes which Congress meant to assist. \* \* \*

In the case of *Weyl* v. *Commissioner*, 48 Fed. (2d) 811; reversing 18 B.T.A. 1092, the same court expressed the opinion that " Congress did not intend to use the word ' education ' in the statute in any exceptional sense \* \* \*," and quoted with apparent approval a dictionary definition of the term. In allowing the contribution as a deduction the court pointed out, however, that the corporation

(League for Industrial Democracy) had "no legislative program hovering over its activities."

In the more recent case of *Leubuscher* v. *Commissioner*, 54 Fed. (2d) 998, the same court, in allowing the deduction of a legacy to a foundation organized to expound the principles of Henry George, pointed out that no part of the money was to be used in "seeking the passage of legislation." In the same proceeding the court considered the deductibility of a contribution to the Manhattan Single Tax Club, a corporation having as one of its purposes advocacy of the abolition of all taxes upon industry and the products of industry and their replacement by a single tax upon land. In holding that the contribution was not deductible, the court said:

* * * It [the club] has for its purposes the dissemination of controversial propaganda, which means a plan for the publication of a doctrine or system of principles.

This we do not regard as exclusively educational within the meaning of the statute, but on the contrary it tends, we think, to accomplish the purpose of the person proposing it, and that purpose is to effect a change in the existing system of taxation. Such a purpose does not meet the requirements of the statute. * * *

In *John H. Watson, Jr.*, 27 B.T.A. 463, the Citizens League of Cleveland, to which the contribution there in question was made, classified candidates for public office, and when considered desirable, advocated amendments to existing laws and presented its recommendations to the proper legislative body. We held that such activities were not educational but in the field of advocacy in political matters.

The parties regard the contributions in question as contributions to the Association. There is no occasion to distinguish them, the League of Nations Association of Illinois, to which the donations were made, being merely a branch office of the Association.

The certificate of incorporation of the Association, as amended (no contention is made that it read otherwise throughout 1928), gives as the purpose of the Association " * * * the cultivation of such public opinion as will influence the government of the United States to cooperate to the fullest extent practicable in the activities of the League of Nations and to enter the League of Nations at the earliest practicable date." The platform of the Association, as set forth in one of its published pamphlets, is much broader, and includes " promotion of American cooperation with and support of the various commissions and other agencies of the League in political as well as nonpolitical activities " and " Vigorous support of the three protocols for adherence to the World Court." The chief objective of the Association was the entrance of the United States into the League of Nations. The development of sufficient public

**436**

opinion to influence the proper authorities of the United States to bring about the result desired was the declared purpose of the Association.

Whether the United States should join the League of Nations is, as history relates, a highly controversial question. At times it has been the subject of bitter debate in the halls of Congress. The organizers of the Association adopted one side of the question and incorporated the Association for the stated purpose of bringing public opinion in line with their views through the dissemination of literature, public addresses, etc. They were in the final analysis advocates of a change in existing methods of dealing with certain international questions by our Government. Public opinion may be, and often is, cultivated by other than educational methods. The expressed purpose of the Association is not, in our opinion, exclusively educational.

Neither do we think that the operations of the Association were exclusively educational. Judged in the light of the broad meaning of the word "educate", some of the activities of the Association were educational, notwithstanding the highly controversial character of the subject. Other activities were beyond the realm of education, such as the writing of letters to legislators when the need was felt, urging our adherence to the World Court, presenting issues before national political conventions, urging members to select candidates for Congress on the basis, among other things, of their opinions on principles advocated by the Association, etc.

On the whole record, we are of the opinion, and so hold, that the Association was not organized and operated exclusively for educational purposes. *Slee* v. *Commissioner, supra; Leubuscher* v. *Commissioner, supra; John H. Watson, Jr., supra.* No error was committed by the respondent in refusing to allow the contributions in question as deductions.

> *In Docket No. 59388 decision will be entered for the respondent. In Docket No. 59389 decision will be entered under Rule 50.*