ARTHUR E. BRAUN, SURVIVING TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF T. H. GIVEN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54556. Promulgated February 23, 1934.

1162

*Maynard Teall, Esq.*, for the petitioner.
*F. R. Shearer, Esq.*, for the respondent.

OPINION.

TRAMMELL: The first matter of which petitioner complains is the refusal of the respondent to allow as a deduction from gross income for each of the taxable years 1927 and 1928 the amount of $37,500 paid in each of those years to the trustees for their services in managing, conserving, and operating the two publishing companies. By amendment to the amended petition, petitioner further alleges that, since respondent did not allow these payments as compensation for services rendered, he erred in refusing to take account of the pay-

ments as additional cost of the stock of the publishing companies and reduce the taxable profit from the sale of the stock accordingly.

Respondent contends that the written agreement of November 3, 1927, between the life tenant, on the one side, and the two remaindermen, who were also trustees, on the other, these parties being the only persons interested in the trust estate, provided in effect for the distribution of a portion of the corpus of the estate, namely, $75,000, to the remaindermen and $150,000 to the life tenant, prior to the time of distribution fixed in decedent's will, which created the trust estate. Respondent further contends that if the payments to the trustees did not constitute a partial distribution of the corpus of the trust to the remaindermen, the amounts can not in any event be regarded as a capital expense to be reflected in computing capital gain on the sale of the stock of the publishing companies, and that, even if the payments are properly deductible as business expense in determining ordinary net income, the allowance of such deductions would result in a corresponding reduction of the net income distributable to the life tenant, and would not affect the tax liability of the petitioner. We think the latter contention of the respondent must be sustained.

Respondent also argues that if the payments in controversy are allowable deductions from ordinary gross income, then the amount of $37,500 paid to the trustees in 1928 was constructively received by them in 1927, since the evidence shows that the whole amount of $75,000 was due and payable immediately after the written agreement was executed and the trustees at that time had in their hands sufficient funds to pay the amount in full. In the view we take of this issue, the question of constructive receipt is unimportant and need not be decided by us, as will be more fully indicated below.

The Revenue Act of 1928, applicable to the year 1928, provides as follows:

SEC. 161. IMPOSITION OF TAX.

(a) *Application of tax.*—The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

\* \* \* \* \* \* \*

(2) Income which is to be distributed currently by the fiduciary to the beneficiaries \* \* \*.

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiary \* \* \*.

Substantially the same provisions are contained in section 219 of the Revenue Act of 1926, applicable to the taxable year 1927.

It must be borne in mind that we are concerned here only with the tax liability of the trust estate created by the decedent's will. Neither the life tenant nor the trustees, individually, are before us.

Plainly the statutes above referred to contemplate that the tax liability of this trust estate shall be computed in the same manner and on the same basis as in the case of an individual, except that the income upon which the trustee is required to pay the tax shall be reduced by the additional deduction of the income distributable to the life tenant, which, under the decedent's will, embraces all of the ordinary net income. The only income taxable to the trustee is capital net gain. It is clear, then, that the allowance of the deductions claimed by the petitioner as compensation for personal services cannot affect in any manner the tax liability of the trustee. To allow these deductions from ordinary income would merely result in decreasing the amount of ordinary net income distributable to the life tenant, and whatever the amount of such income might be, whether more or less than that reported in the fiduciaries' return, the capital net gain would not be changed by such adjustment.

If the decedent's will had provided that the net income of the trust should be distributed to the life tenant within the discretion of the trustees, and for the taxable years they had distributed only a portion of such income to the beneficiary and had retained the balance and paid tax thereon, then the allowance of the claimed deductions would reduce the tax liability of the trust estate. But where, as here, the entire amount of the ordinary net income is distributable, the whole tax thereon is payable by the beneficiary and any adjustment of the amount of the distributable income does not affect the tax liability of the fiduciaries.

Therefore, it is unnecessary for us to decide in this proceeding whether or not the payments made to the trustees during the taxable years constituted allowable deductions from ordinary income as compensation for services rendered, or whether the whole $75,000, if so allowable, should be deducted from the income for 1927 on the theory that one half of this amount was actually received and one half was constructively received by the trustees in that year. These are matters which affect only the tax liability of the trustees, individually, and of the life tenant, and they are not before us. The only question material here is whether or not these payments constitute capital deductions to be taken into account in determining the net gain derived from the sale of the stock of the publishing companies in 1927. The profit realized from the sale of the stock was reported by the trustees in their return for 1927 as capital net

gain and the tax was paid by the trust estate. The trustees kept their books of account and made their tax returns on the basis of cash receipts and disbursements, and, if the amounts paid to the trustees in 1927 constituted capital deductions, such deductions would serve to reduce the deficiency determined by respondent against the trust estate, petitioner herein; otherwise not.

The amounts paid to the trustees in 1927 were deducted by them in computing the profit returned from the sale of said stock, while the amounts paid to the trustees in 1928 were deducted from ordinary income. In determining the deficiencies respondent disallowed both deductions.

Section 208 (a) (3) of the 1926 Act defines " capital deductions " as meaning " such deductions as are allowable by section 214 for the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year."

In our opinion the preponderance of the evidence indicates that the deductions claimed by the petitioner are not properly allocable to or chargeable against the capital assets sold during the taxable year 1927, and, hence, are not allowable as capital deductions. The agreement of November 3, 1927, authorized the payment of $75,000 to the trustees " as full compensation for all their services rendered heretofore * * * in the *management* of The Post Publishing Company and The Sun Publishing Company." And at the hearing Arthur E. Braun, surviving trustee of the trust estate, testified in reference to these payments as follows:

Q. Did both you and Mr. Moore, or you or Mr. Moore, prior to 1927, at or about the time of the sale of the stock of these two companies, ever receive any compensation for the work you have described?

A. We did not.

Q. Was it for the effectuating of the sale that you were paid, or for your work over the years, or for both?

A. It was not for effectuating the sale particularly, although, if we had not sold the papers, I don't think we would have asked any compensation for our work. It was for the services that we had rendered in taking care of these properties, conserving them, and of course, we did negotiate the sale; but as I say, we did not claim any compensation for that particular thing.

This witness again later testified that the compensation paid to the trustees was " for the *management* of the newspapers" and that the matter of their compensation for such services was first brought up " subsequent to the time when the sale of the papers was made to Paul Block."

This evidence we think is insufficient to establish that the $75,000 paid to the trustees as compensation for their services in managing and conserving the newspaper properties constituted a commission for the sale of the stock, or that it should be regarded as additional

cost of the stock sold or otherwise as an expense incident to the sale. Respondent's determination on this issue is approved.

The second issue involves the question of the proper basis for computing gain from the sale in 1928 of stock of the Radio Corporation of America. Pursuant to the decree of the Orphans' Court entered May 20, 1925, 20,000 shares of class A common stock in that corporation were distributed to the trustees, and pursuant to the decree of the same court entered November 3, 1927, an additional 15,000 shares of the stock were distributed to the trustees.

During the year 1928 the trustees sold 1,000 shares of the stock distributed to them under the decree of May 20, 1925, for a total consideration of $100,910. In their tax return for 1928 the trustees reported net gain from the sale of 1,000 shares of stock in the amount of $48,972.50, computed by deducting from the proceeds of sale the stipulated fair market value of the stock at June 11, 1925, which was $51.9375 per share. Respondent computed net gain upon the sale of said stock in the amount of $42,410, on the basis of the stipulated fair market value of the stock at May 20, 1925, the date of the decree of distribution, which was $58.50 per share. Thus respondent reduced by the amount of $6,562.50 the amount of net gain reported by the trustees.

During the year 1928 the trustees also sold 8,500 shares of stock of the Radio Corporation of America distributed to them under the decree of November 3, 1927, for which they received the net amount of $1,576,055.79. The trustees reported net gain from the sale of this stock computed by deducting from the net proceeds of sale the stipulated fair market value of the stock at November 26, 1927, which was $94.6875 per share, while respondent increased the net gain so reported by the trustees to the extent of $121,656.25, using as the basis for his computation the stipulated fair market value of the stock at November 3, 1927, the date of the court's decree, which value was $80.375 per share.

The specific point of controversy between the parties under this issue is whether the proper basis for computing gain from the sale of the Radio Corporation of America stock is the fair market value at the dates of the decrees of distribution or at the dates on which distribution was directed by the decrees.

The stock involved was acquired by the trustees by general bequest under decedent's will, and the Revenue Act of 1928, in section 113 (a) (5), provides that in the case of personal property so acquired the basis for determining gain or loss " shall be the fair market value of the property at the time of the distribution to the taxpayer." Both parties concede the applicability of this statute, but they are in

disagreement as to what date constitutes "the time of the distribution to the taxpayer."

Each of the decrees in question directed that distribution be made in accordance with an attached schedule "unless exceptions be filed within ten days, or an appeal be taken herefrom within three weeks."

Respondent contends that because the decrees ordered distribution in accordance with a petition or agreement filed by all known parties having an interest in the estate, there was ▮▮▮▮ who could file exceptions or appeal therefrom, and therefo▮▮▮▮▮tes on which the decrees were entered should be taken as the time of the distribution."

The petitioner contends that each decree directed distribution to be made only in the event an appeal was not taken therefrom within three weeks, and hence the trustees did not acquire legal title to the stock by distribution until the expiration of the full period of 21 days from the entry of the decrees.

In the case of the decree of May 20, 1925, the period of three weeks for appeal expired on June 10, 1925, and petitioner asserts that the following day, June 11, 1925, was the date of distribution of the 1,000 shares of stock sold in 1928. In computing the profit reported the trustees used as a basis the fair market value of the stock on the last mentioned date.

In the case of the decree of November 3, 1927, the 21 days specified for appeal expired on November 24, 1927, which date was Thanksgiving Day, a legal holiday. Petitioner argues, therefore, that the following day, November 25, must be included within the period during which an appeal might have been taken, and that the next day, November 26, 1927, was the date of distribution of the 8,500 shares of stock sold in 1928.

Respondent cites *Brewster* v. *Gage*, 280 U.S. 327, in support of his contentions, while petitioner argues that that decision does not rule the present proceeding. We are in accord with the petitioner's view on this point.

The cited case arose under the Revenue Act of 1921, which provided in section 202 (a) (3) that, in the case of property acquired by bequest, devise or inheritance, the basis for computing gain or loss should be the price or value of such property "at the time of such acquisition." And the Court held that the value of stock at the time of testator's death determined the amount of taxable gain realized from the sale thereof by the legatee, and not the value of the stock at date of the decree of distribution.

However, in that connection the Court pointed out that the Revenue Act of 1928 in section 113 (a) (5) expressly fixed fair market value "at the time of the distribution to the taxpayer" as the basis in

all cases other than personal property acquired by specific bequest and real estate acquired by general or specific devise or by intestacy. The Court further stated in its opinion that "The deliberate selection of language so differing from that used in the earlier acts indicates that a change of law was intended." We think, therefore, that *Brewster* v. *Gage*, and the line of our own decisions in accordance with or following that case, can not be regarded as decisive of the issue here.

Respondent argues that in Pennsylvania, and in other jurisdictions as well, " distribution " is accomplished by the probate court's decree of distribution and that the " time of the distribution " does not mean some later date on which the beneficiary may demand delivery of the property, or on which the personal representative carries out the mandate of the court's decree by delivering possession thereof, citing, among others, *In re Piper's Estate*, 57 Atl. 1118; *In re Donnelly's Estate*, 116 Atl. 165; *In re Harned's Estate* (Pa.), 116 Atl. 895.

The cited cases do not appear to establish definitely respondent's contention. In some of them it is said substantially that distribution is made by the probate court or effected by that court's decree; others speak of distribution as being made by the personal representative pursuant to the probate court's decree; but in none of the cases referred to was this question specifically presented to or decided by the court. However, if we assume, without attempting to decide, that distribution is accomplished by the decree, we think this does not help respondent's position. Certainly in such case distribution can not consistently be regarded as accomplished by the decree except in strict accordance with the terms and conditions of the decree itself.

The decrees involved in the present case ordered distribution only in the event exceptions were not filed within ten days or an appeal taken within three weeks. If either of the contingencies specified had happened, then the decrees did not direct distribution.

As we construe these decrees, they directed in effect that distribution be made at a future date, upon the happening of specified events, and until those events transpired, the decrees by their terms were not operative to effect distribution. To illustrate, the decree of May 20, 1925, in substance ordered distribution on June 11, 1925, unless prior to that date exceptions had been filed or an appeal taken. It follows, we think, that no distribution was made to the trustees by the decrees prior to the dates fixed therein, even though it might have been known before that time that no exceptions would be filed or appeal taken.

A decree of distribution is in the nature of a judgment *in rem*, and is binding upon all concerned unless appealed from. *Rice* v. *Braden*, 243 Pa. 141; 89 Atl. 877. Such a decree, when complied

with, protects the personal representative, but if he makes distribution or partition of the property otherwise he not only may not claim protection of the decree, but may be rendered liable to surcharge.

The dates on which the executors in this case delivered actual possession of the stock to the trustees, we think, are immaterial. The dates on which the decree directed distribution constitute the "time of the distribution to the taxpayer" within the meaning of section 113 (a) (5), *supra*, and the fair market value of the stock on those respective dates is the basis provided for determining gain or loss. Such basis was properly used by the taxpayer in computing the gain derived. Respondent's action on this issue is reversed.

The third and final issue raised by the petitioner concerns the rate of tax applicable to the profit derived from the prepayment, or redemption before maturity, of certain bonds of the Post Publishing Co. held by the trust estate. These bonds were distributed to the trustees under the decree of May 20, 1925, at their face value of $150,000. They were subject to call prior to maturity at a premium of 5 percent, and on August 1, 1927, the bonds were so called and redeemed. The trustees received $157,500 for the bonds and reported in their tax return for 1927 as capital net gain the amount of $7,500. In auditing the return respondent made no change in this item. Petitioner contends that the profit of $7,500 is properly taxable as ordinary income.

Petitioner's contention on this point must be sustained. The Revenue Act of 1926 (sec. 208 (a)) defines "capital gain" as meaning taxable gain from the *sale or exchange* of capital assets consummated after December 31, 1921. The bonds in question were capital assets, but they were not *sold or exchanged*. Payment of the amount specified in a bond, either at maturity or pursuant to an authorized call prior to maturity, is not a *sale or exchange* of such bond, and the gain derived from the transaction is taxable as ordinary income. *John H. Watson, Jr.*, 27 B.T.A. 463. The deficiency for 1927 will be redetermined accordingly.

There remains for consideration the issue raised by the respondent in his answer to the amended petition, to the effect that in determining the deficiency for 1927 he failed to disallow a deduction of $150,000 representing the amount paid to the life tenant, Annie Given Kerr, under the agreement of November 3, 1927, and thereby understated the petitioner's net income for that year, subject to tax as capital net gain.

Prior to that agreement there had been controversy between the life tenant and the trustees respecting the amount of income distributable to the life tenant under decedent's will. On August 1, 1927, the trustees had sold the stock of the two publishing com-

1178

panies, and thereafter, by the contract mentioned, the trustees and remaindermen agreed to pay to the life tenant out of the principal of the corpus of the trust estate the sum of $150,000 in full settlement of her claim for additional income, and the life tenant agreed to allow the trustees and remaindermen the total sum of $75,000, to be paid out of the proceeds of the sale of stock of the publishing companies, as compensation for services rendered in the management of the companies.

In their income tax return for 1927 (Form 1040), the trustees reported as capital net gain taxable to the trust estate the gain computed on the fiduciary return of income (Form 1041) less said amount of $150,000, thus in effect claiming a deduction from capital gain of the amount paid to the life tenant.

Petitioner's contentions, briefly summarized, are that this amount represents a distribution of additional income to the life tenant, which is deductible in computing the net income of the trust estate under subdivision (b) (2) of section 219 of the Revenue Act of 1926, *supra*, or, if not so deductible, the amount represents the settlement of a claim against the estate and is deductible as expense.

If either of these contentions is sound, it would not affect the tax liability of the petitioner as trustee of the trust estate, but only the tax of the life tenant, since under decedent's will all the ordinary net income was distributable to her. The trust estate was liable for and paid the tax only on the capital net gain, and this is true even though the payment of the $150,000 was actually in fact made out of the corpus or principal of the trust. It is the nature of the expenditure which determines the question of deductibility, not the fund out of which it is paid. In no event could this item be regarded as expense properly allocable to or chargeable against capital assets sold in the taxable year.

What we said hereinabove in respect of the $75,000 paid to the trustees applies with equal force to the $150,000 paid to the life tenant under the same contract. The deduction claimed by petitioner from capital gain is disallowed.

The deficiencies for 1927 and 1928 will be redetermined in accordance with the foregoing opinion, and the deficiency for 1927 will then be increased in an amount equal to the aggregate by which the deficiencies for both years have otherwise been decreased, but not to exceed the maximum increase of the 1927 deficiency resulting from the disallowance of the deduction above referred to.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*