**FELIN v. KYLE, formerly Acting Collector of Internal Revenue (two cases).**

Nos. 18936, 18938.

District Court, E. D. Pennsylvania.

March 3, 1938.

Bertram P. Rambo and Paul W. Knox, both of Philadelphia, Pa., for plaintiffs.

J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., and J. Leonard Lyons, Sp. Asst. to the Atty. Gen., of Washington, D. C., for defendant.

MARIS, District Judge.

These are suits against the former acting collector of internal revenue for the First collection district of Pennsylvania brought by two residents of the district to recover income taxes alleged to have been erroneously collected for the calendar year 1932. The cases were tried together and will be disposed of in one opinion. From the evidence I make the following special findings of fact:

Prior to 1928 the plaintiffs owned stock in Charles F. Felin & Co., which stock pursuant to a reorganization was exchanged in that year for preferred stock and ten-year 6½ per cent. sinking fund gold notes of the Lumber & Millwork Company of Philadelphia. Plaintiff Charles F. Felin received, inter alia, $470,000 par value of the notes and plaintiff Edna B. Felin received $180,000 par value of the notes. From and after the year 1929 the plaintiffs were the only holders of these notes.

The trust agreement entered into between the Lumber & Millwork Company of Philadelphia and the Provident Trust Company of Philadelphia, as trustee, under which the aforesaid notes were issued, provided that the Lumber & Millwork Company expressly reserved the right to pay off and redeem all or any part of the notes at any time outstanding prior to maturity on any interest payment date. A sinking fund was provided under which $35,000 par value of the notes were required to be redeemed and paid off on each semiannual interest payment date. Prior to the transaction involved in this case Mr. Felin executed and filed with the trustee a written instrument waiving any and all requirements as to notice prior to redemption of the notes as required by the trust agreement.

In 1932 Messrs. Erny and Nolen were heavily indebted to the Lumber & Millwork Company and were unable to reduce their indebtedness unless they could sell certain first mortgages which they held on properties which they had built. The president of the Lumber & Millwork Company accordingly early in July, 1932, requested Mr. Felin to purchase certain mortgages from Messrs. Erny and Nolen in order that they might liquidate their account, and in this connection, in order to provide the funds required to purchase the mortgages, offered to anticipate the redemption of $28,000 of bonds which normally would have been redeemable on January 1, 1933. Mr. Felin thereupon agreed to purchase the mortgages.

On July 20, 1932, the Lumber & Millwork Company transmitted the sum of $28,951.22 to the Provident Trust Company of Philadelphia, as trustee, $28,000 thereof representing the par value of twenty-eight notes for $1,000 each and the balance being the interest and premium computed to be due upon the redemption of said notes. On July 22, 1932, $23,000 of the notes belonging to Mr. Felin and $5,000 of the notes belonging to Mrs. Felin, which had been in the custody of the Provident Trust Company for safe-keeping, were canceled by it as trustee, and the sum of $28,951.22 was paid by the said trustee to Mr. Felin, who on the same day deposited $23,777.21 thereof in his personal bank account and $5,168.96 thereof in the personal bank account of Mrs. Felin.

On July 22, 1932, pursuant to instructions from Mr. Felin, the Provident Trust Company, as agent, transmitted to the North Philadelphia Trust Company the sum of $23,000 from his account and the sum of $4,700 from the account of Mrs. Felin. The North Philadelphia Trust Company used these funds for the purchase from Messrs. Erny and Nolen on July 22, 1932, of three mortgages aggregating $13,800 for Mr. Felin and one mortgage for $4,700 for Mrs. Felin, on July 27, 1932, of one mortgage for Mr. Felin for $4,500, and on July 28, 1932, of one mortgage for Mr. Felin for $4,700. The aggregate amount of the mortgages so purchased by Mr. and Mrs. Felin was $27,700.

The sum of $27,700 was paid by Messrs. Erny and Nolen to the Lumber & Millwork Company on account of their indebtedness to it, $14,000 being paid on July 22, 1932, $9,000 on July 29, 1932, and $4,700 on August 5, 1932.

On or before March 15, 1933, the plaintiffs each filed their income tax returns for the calendar year 1932. In the case of Mr. Felin the return showed an income tax liability of $2,939.91 and in the case of Mrs. Felin $1,877.55, which amounts were paid in 1933.

Thereafter, upon an audit of the returns, the Commissioner of Internal Revenue determined a deficiency of tax for 1932 of $3,745.34 in the case of Mr. Felin and $146.83 in the case of Mrs. Felin, said deficiencies being based in part upon the ruling of the Commissioner that the sum of $17,842.02 reported by Mr. Felin and $4,597.90 reported by Mrs. Felin as capital gains derived from the sale or exchange of the ten-year 6½ per cent. notes of the Lumber & Millwork Company redeemed on July 22, 1932, were not capital gains but rather ordinary income subject to normal and surtax rates. The notes in question cost Mr. Felin $254.56 per bond and Mrs. Felin $114.20 per bond. Subsequent to the audit, but before the deficiency assess-

ment above referred to, the plaintiffs on July 21, 1934, each paid additional taxes for the year 1932. In the case of Mr. Felin the additional tax amounted to $663.54 with interest of $53.73 and in the case of Mrs. Felin $69.82 with interest of $5.65.

On November 17, 1934, Mr. Felin paid the deficiency assessment above referred to, amounting to $3,745.34, with interest of $374.53, or a total of $4,119.87. On November 30, 1934, Mrs. Felin paid the deficiency assessment above referred to amounting to $146.83, with interest of $14.68, or a total of $161.51. On January 16, 1935, each of the plaintiffs filed claims for the refund of the additional taxes and interest so paid, and these claims were rejected by the Commissioner on June 19, 1935.

Other facts which may be material appear in the agreed statements of facts filed by the parties which are incorporated herein by reference.

### Discussion.

The question which these cases raise is whether the gain admittedly derived by the plaintiffs from their Lumber & Millwork Company notes was a capital gain and taxable as such or an ordinary gain subject to normal tax and surtax. The notes had been held by the plaintiffs for more than two years and were admittedly capital assets. The answer to this question, therefore, depends upon whether the transaction involved a sale or exchange of capital assets within the meaning of section 101(c) (1) of the Revenue Act of 1932, 26 U.S.C.A. § 101 note, which defines "capital gain" as meaning "taxable gain from the sale or exchange of capital assets consummated after December 31, 1921." Clearly there was no sale of the notes. The question, therefore, resolves itself into whether there was an exchange of the notes within the meaning of the law.

The plaintiffs argue that they exchanged their notes for the Erny and Nolen mortgages. Whether they did so is, however, a question of fact, and it is clear from the facts as I have found them that they did not do so. Whatever might have been the situation if the notes had been delivered by the plaintiffs to Messrs. Erny and Nolen in return for the mortgages and afterward presented by the latter to the trustee for redemption, the fact is that the plaintiffs themselves presented their notes to the trustee for redemption, received the redemption price in cash, and with a part of the cash thus received purchased the mortgages from Messrs. Erny and Nolen. Under these circumstances the exchange between the plaintiffs and Messrs. Erny and Nolan was of cash for mortgages and the notes did not enter into the exchange at all.

The plaintiffs further contend, however, that, even though it be held that their notes were redeemed by Lumber & Millwork Company, the redemption itself constituted an exchange of the notes for cash within the meaning of section 101(c) (1) of the Revenue Act 1932, 26 U.S.C.A. § 101 note. They argue that the language of the statute should be construed as if it read "sale or other disposition of capital assets" and point to certain congressional proceedings in support of their view. In my opinion, however, the language of the statute is clear and such a construction is inadmissible. Accordingly the transaction, which was essentially but the payment by the Lumber & Millwork Company of certain of its outstanding obligations in accordance with their terms, was neither a sale nor exchange of the notes within the meaning of the statute. Watson v. Commissioner, 27 B.T.A. 463; Braun v. Commissioner, 29 B.T.A. 1161; Brown v. Commissioner, 36 B.T.A. 178.

The following language of Member Van Fossan of the Board of Tax Appeals in Watson v. Commissioner, supra, 27 B.T.A. 463, at page 465, is applicable to the present case:

"It is elemental that where a statute is clear and unambiguous in its terms and provisions resort should not be had to legislative history to determine the limits of its compass. The statute in question is so simple in construction and so clear in meaning that it justifies no resort to the Congressional Committee's reports as an aid in the interpretation thereof.

"The words 'sale or exchange' are ordinary words of well established meaning. Taken in their context they are susceptible of no misconstruction. Payment of the amounts specified in the bonds, either at maturity or pursuant to an authorized call prior to maturity, is not a 'sale or exchange' of such bonds. It is merely the payment of an obligation according to its fixed terms. For these reasons we believe the decision in Henry P. Werner, supra [Werner v. Commissioner, 15 B.T.

A. 482], was erroneous and it is accordingly overruled.

"In the instant case there was neither a 'sale' nor an 'exchange' of a capital asset when the Liberty bonds were paid at maturity. There was the satisfaction of an obligation of the United States by payment. Loss incurred or gain realized in such a transaction is not a capital loss or a capital gain under the definition found in the statute."

Braun v. Commissioner, supra, and Brown v. Commissioner, supra, each involved the gain derived from the redemption prior to maturity of corporate obligations, and the Board in each case held, following Watson v. Commissioner, supra, that these gains were not derived from the sale or exchange of the obligations but rather from their payment. These cases are indistinguishable from the present one. Being in accord with them, I conclude that the gains derived by the plaintiffs in 1932 upon the redemption of the notes of the Lumber & Millwork Company did not result from the sale or exchange of the notes, and were, therefore, not capital gains, within the meaning of the Revenue Act.

As the Board pointed out in Childs v. Commissioner, 35 B.T.A. 1125, the case is not analagous to that of the redemption of preferred stock, since the latter does not involve the payment and cancellation of existing indebtedness. Furthermore, the fact that the Congress in enacting the Revenue Act of 1934 specifically added a provision in section 117, 26 U.S.C.A. § 101, that amounts received by a bondholder upon the retirement of corporate bonds should be taxable as capital gain raises a strong presumption that this was not so under the prior act. This amendment of the prior law was made after the latter had been construed otherwise by the Board in Watson v. Commissioner, supra, and after that construction had been adopted by the Commissioner, I.T. 2678, XII-1 C.B. 117. It thus becomes clear that the Congress intended by this new provision to change the prior rule. United States v. Southern Pacific Co., D.C., 230 F. 270; United States v. Bashaw, 8 Cir., 50 F. 749, reversed on other grounds 152 U.S. 436, 14 S.Ct. 638, 38 L.Ed. 505.

I accordingly reach the following conclusions of law:

The Lumber & Millwork Company notes owned by the plaintiff which were redeemed by the company in 1932 were not sold or exchanged by the plaintiffs within the meaning of section 101(c) (1) of the Revenue Act of 1932, 26 U.S.C.A. § 101 note.

The gain derived by the plaintiffs from the redemption of said notes was an ordinary gain and was properly included by the Commissioner in their ordinary net income for the year 1932.

The additional income taxes assessed against and collected from the plaintiffs for the year 1932 were legally assessed and collected and the plaintiffs are not entitled to the refund thereof.

I accordingly find in favor of the defendant and against the plaintiff in each suit.