311 F.2d 947
 Oscar S. and Leona W. PATTIZ
v.
UNITED STATES of America.
Alex DEUTSCH and Eleanor Deutsch
v.
UNITED STATES of America.
Lester DEUTSCH and Betty Deutsch
v.
UNITED STATES of America.
Rosella FAMILIAN, as Trustee of the Sondra J. Familian Trust
v.
UNITED STATES of America.
Rosella FAMILIAN, as Trustee of the Gary R. Familian Trust
v.
UNITED STATES of America.
Isadore FAMILIAN and Sunny Familian
v.
UNITED STATES of America.
Isadore FAMILIAN as Trustee of the Arnold Familian Trust
v.
UNITED STATES of America.
Rosella FAMILIAN, as Executrix of the Estate of George Familian, Deceased, and Rosella Familian,
v.
UNITED STATES of America.
Annette Familian SHAPIRO
v.
UNITED STATES of America.
 No. 219-61.
 No. 244-61.
 No. 245-61.
 No. 282-61.
 No. 287-61.
 United States Court of Claims.
 January 11, 1963.
 Rehearing Denied March 6, 1963.
 
 Arthur B. Willis, Los Angeles, Cal., for plaintiffs. John P. Lipscomb, Washington, D. C., was on the briefs.
 Cynthia Holcomb, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. Edward S. Smith, Lyle M. Turner, Philip R. Miller, and George Willi, Washington, D. C., were on the briefs.
 WHITAKER, Judge.
 
 
 1
 The issue presented in these cases is whether the difference between the purchase price of registered notes and the price at which the payor redeemed them is ordinary income or a capital gain.
 
 
 2
 Plaintiffs rely on section 117(f) of the Internal Revenue Code of 1939, as amended, which provides:
 
 
 3
 "For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtednesses issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor." In January or February of 1952 taxpayers purchased registered debentures issued by Winco #1, a California corporation engaged in "building and developing of buildings, tracts, and housing developments," at a price equal to two-thirds the debentures' face value. The debentures were all in the following form:
 
 UNITED STATES OF AMERICA
 State of California
 
 4
 No. ........ $........
 
 Winco #1 Five Year Notes
 
 5
 Winco #1, a corporation organized and existing under and by virtue of the laws of the State of California (hereinafter called the Company), for value received, hereby promises to pay to the registered holder thereof ............ Dollars lawful money of the United States of America, upon the 1st day of January, 1957, without interest.
 
 
 6
 The principal hereof is hereby made payable at the head office of Union Bank & Trust Co. of Los Angeles in the City of Los Angeles, County of Los Angeles, State of California.
 
 
 7
 This note is one of an issue of four hundred ten (410) Winco #1 Five Year Notes, duly authorized in the manner and form prescribed by law, the total principal amount thereof being Three Million ($3,000,000.00) Dollars, all of said notes being of like date, form and tenor, except the variations necessary to express their numbers and denominations * * *.
 
 
 8
 * * * * *
 
 
 9
 The entire issue of said notes, or any part thereof, are subject to redemption by the Company at any time in the manner and upon the notice provided for in said Trust Indenture, upon the payment of the amounts hereinafter set forth for each One Thousand ($1,000.00) Dollars principal amount of the respective notes:
 
 
 10
 If such redemption shall occur on or before January 1, 1954, Eight Hundred Eighty Eight ($888.00) Dollars;
 
 
 11
 If such redemption shall occur thereafter and on or before January 1, 1955, Nine Hundred Twenty Two ($922.00) Dollars;
 
 
 12
 If such redemption shall occur thereafter and on or before January 1, 1956, Nine Hundred Fifty Five ($955.00) Dollars;
 
 
 13
 If such redemption shall occur thereafter, the full principal thereof.
 
 
 14
 The principal of this note and of all said notes may be declared due and payable prior to maturity in the manner and with the effect provided in said Trust Indenture in case default shall occur as therein provided.
 
 
 15
 This note shall be registered in the manner and upon the conditions and with the effect as set forth in said Trust Indenture.
 
 
 16
 This note shall not be valid or become obligatory for any purpose unless and until authenticated by the signature of Union Bank & Trust Co. of Los Angeles, or a successor trustee, upon the Trustee's certificate and registration endorsed thereon, and until authentication by the signature of the Company as to registration. * * *
 
 
 17
 Winco redeemed the debentures purchased by these taxpayers during 1953, paying $888 per $1,000 face value, as provided for in the debentures.
 
 
 18
 In each case, in their tax returns for the calendar year 1953, taxpayers reported the increment of the redemption price over their original purchase price and paid the capital gains tax thereon. In each case, the Commissioner of Internal Revenue determined that the gain on the redemption of the debentures constituted ordinary income, and assessed a deficiency. In each case the taxpayers paid the assessed deficiency and interest thereon and thereafter filed a claim for refund upon which each lawsuit is based.
 
 
 19
 The scope of section 117(f) has been before the Courts of Appeals in four different circuits. It first came before the Sixth Circuit in the case of Commissioner v. Caulkins, 144 F.2d 482. Caulkins purchased in 1928 a so-called "Accumulative Installment Certificate" in the principal sum of $20,000, payable in ten years on condition that the required payments were made. Caulkins made the payments, which amounted to $15,043.33, and at maturity was paid the sum of $20,000. The court held that the difference in the amount paid and the amount received was capital gain because of the provisions of section 117(f). Responding to the contention of the Commissioner of Internal Revenue that this was compensation for the use of money, held by the Supreme Court in Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416, to be interest, the court said:
 
 
 20
 "Congress might well have made the differentiation urged by the Commissioner, since it is difficult to perceive any practical reason for taxing increment of the type involved here differently from ordinary income. The fact that the contract does not provide for equal amounts of interest to be set aside each year, available to the holder, does not affect the question. The increment is consideration paid for the use of the amounts paid in. Unfortunately for the Commissioner's contention, Congress has not made the differentiation. [Italics ours.]
 
 
 21
 * * * * *
 
 
 22
 "* * * Clearly $20,000 was the amount received on the retirement of the certificate, and under the plain wording of § 117(f), it was taxable as a capital gain. A provision that the increment in such cases should be taxable under § 22(a) might or might not have been wise and fair; but Congress has not enacted it, and the courts cannot supply it by judicial legislation. Because of the application of the capital gains tax to securities which on their retirement may not result in capital gain, inconsistencies and inequalities may well result from the application of § 117(f). If this is so, the correction of this defect in the operation of the statute is for Congress and not for the courts. * * *"
 
 
 23
 The Commissioner of Internal Revenue acquiesced in this decision from December 1944 to December 1954, when he withdrew his acquiescence.
 
 
 24
 Another one of these certificates came before the Ninth Circuit in the case of Commissioner v. Morgan, 272 F.2d 936. That court refused to follow the Caulkins decision. It pointed out that, following the decision of the Supreme Court in Fairbanks v. United States, 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855, affirming a decision of the Ninth Circuit holding that the gain from the exchange of property for corporate bonds, which were retired by the corporation at par, was not a "sale or exchange of capital assets" and, thus, not a "capital gain", the Congress enacted § 117(f), only to make a retirement equivalent to a sale or exchange. However, it said that the section was not intended to cover the gain derived from the purchase of an original issue of bonds, or of other evidence of indebtedness, at a discount, because the difference between the purchase price and the agreed price at which the bonds were redeemed was compensation paid for the use of money, which was in all respects equivalent to interest, which was taxable as ordinary income under § 22(a), defining gross income. The Tax Court in Watson v. Commissioner, 27 B.T.A. 463, was in accord.
 
 
 25
 The Third Circuit came to the same conclusion in Rosen v. United States, 288 F.2d 658. We regret we cannot quote extensively from this opinion since we agree with what was said in it.
 
 
 26
 The Fifth Circuit in United States v. Harrison, 304 F.2d 835, came to the same conclusion. In that case the taxpayer purchased second mortgage bonds of a face value of $404,850 for $300,000. Among other things the court said:
 
 
 27
 "As pointed out in the Morgan and Rosen opinions, Section 117(f) was enacted in response to Watson v. Commissioner, 1932, 27 B.T.A. 463. Watson held that since the capital gains provisions were tied to the term `sale or exchange', a bond retirement could not qualify. The ruling blocked capital gains treatment in cases where by the underlying tests it would be appropriate; for example, the gain received when a bond purchased at a depressed market price is redeemed at par. The gain realized from such a transaction is a form of capital appreciation that resembles the capital gain received when stock or real estate is purchased and later sold at a profit, in contrast to an original issue discount gain which represents the interest or compensation paid for the use of the money loaned."
 
 
 28
 The Harrison and Morgan cases were cited with approval by the Second Circuit in Jaglom v. Comm., 303 F.2d 847.
 
 
 29
 We think this quotation correctly states the sort of gain Section 117(f) was intended to cover and the part it was not intended to cover. It was intended to cover gain derived from appreciation in value, or a case where the purchase was made from some one other than he who issued them at an advantageous price, but certainly not a case where an original issue of bonds or notes were sold at a discount, in lieu of payment of interest on them.
 
 
 30
 This is the case here. If these notes had been redeemed at their maturity date, the discount would have equalled interest at 10 percent, which is the legal rate in California, the State in which the corporation issuing the debentures was incorporated. For the privilege of redeeming them at an earlier date, the borrower agreed, when the debentures were issued, to pay a premium. We held in Equitable Life Assur. Soc'y of U. S. v. United States, 181 F. Supp. 241, 149 Ct.Cl. 316, in an opinion written for the court by Mr. Justice Reed (Ret.), that prepayment charges were "an additional fee for the use of the lender's money for a shorter period of time than originally agreed upon," and that "[t]he charges are part of the compensation to the lender for the use of money." When the debentures were issued, the parties agreed upon the amount to be paid upon the retirement of them at certain stated times prior to maturity. This was the agreed compensation for the use of the purchasers' money for the prescribed periods.
 
 
 31
 In Leaven v. Comm., 37 T.C. 766, the debentures were retired before maturity at a sum agreed upon when they were issued which was ratably higher than the sum payable at maturity. The Tax Court thought the amount agreed upon was compensation for the use of the purchaser's money for the specific period.
 
 
 32
 We think the discount at which these notes were sold was in lieu of the payment of interest on them, and that the difference in the amount paid for them and the amount at which they were redeemed was ordinary income. In our opinion it was not intended by § 117(f) of the Internal Revenue Code of 1939 to treat it as a capital gain.
 
 
 33
 The 1954 Code does not affect the transactions in this case. The 1954 Code effected a change in the law. It evidently was not intended as a clarification of Congress' intention when it enacted the Internal Revenue Code of 1939.
 
 
 34
 The plaintiffs' motions for summary judgment are denied, and the defendant's motions for judgment on the pleadings are granted. Plaintiffs' petitions are dismissed.
 
 
 35
 JONES, Chief Judge, and DAVIS, DURFEE, and LARAMORE, Judges, concur.