WALNUT REALTY TRUST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33377.   Promulgated June 24, 1931.

*Harry Friedman, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

McMAHON: The respondent, in computing the profit from the sale of real estate, used the same values for the notes and real estate acquired as part of the purchase price as were accepted by the parties to the sale, i. e., $82,264 for the notes and $14,000 for the equities in the real estate. He thus arrived at a profit of $83,043.15 which he included in the petitioner's gross income for 1923. He refused to allow the petitioner to compute the profit on the installment sales basis, since, by including the notes and the real estate equities in his computation at the values used by the parties to the sale, he calculated that the initial payment amounted to more than one-fourth of the figure agreed upon by such parties as the purchase price. The petitioner assigns as error this action of the respondent.

Section 212 (d), Act of 1926, is as follows:

Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case * * * (2) of a sale or other

disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

Section 1208 of the same act makes this section retroactive as to the 1921 Act and other acts.

The evidence discloses that the consideration received by petitioner for the sale of property consisted of cash, notes, certain equities in real property, the assumption of a first mortgage, and the assumption of taxes. It will thus be noted that there were no installment payments to be made. See *Thomas F. Prendergast, Executor*, 22 B. T. A. 1259.

It is our opinion that this transaction can not be considered an installment sale. It follows therefore that the respondent did not err in refusing to allow petitioner to return the profit from the sale in question upon the installment sales basis.

The petitioner alleges that in any event the respondent erred in determining the amount of gain from the sale by including the notes and the real estate equities in the amounts of $82,264 and $14,000, respectively.

The face value of the notes was $97,555, and they were valued, for the purpose of the sale, at $82,264. One of the trustees of the petitioner testified that in computing the valuation of the property and the assets received by petitioner in the transaction the price was "glorified" and the notes taken in at inflated values. Two expert witnesses, members of the appraisal committee of the real estate board of Springfield, Mass., testified that they knew the properties which constituted the security for the notes and that they had made an appraisal of the notes. The appraisal itself is not in evidence, but these witnesses stated that, considering the property itself, the income therefrom, the character of the notes (whether secured by first, second or third mortgages) and the length of time the mortgages had to run, they were of the opinion that the fair market value of the notes was $68,988. They also testified that this valuation was arrived at by discounting the notes from 15⅓ to 33⅓ per cent of their face value, depending upon the character of the notes and the length of time they had to run, and that this was the usual method used in Springfield in making such valuations. They also stated that if the petitioner had been forced to sell these notes it probably could not have realized more than 50 per cent of their face value. They did not know the makers of the notes in question but assumed that the makers were solvent. Upon cross-examination, one of them, upon

being informed that Pinney was an endorser on two of the notes, testified that in his opinion these two notes were worth approximately 2 per cent more than he had formerly testified, which increased the value of the total to $69,963. We are of the opinion that the fair market value of the notes in question at the date of the sale was $69,963. The attempt to claim a lower value is based upon the testimony of the witnesses that the petitioner would not have realized more than 50 per cent of the face value upon a forced sale. We do not feel that such testimony is sufficient to establish any lower value than $69,963.

As to the two pieces of real estate involved, the evidence is to the effect that the property, consisting of tenement flats, was in a poor condition, that it was not very desirable or easily rented, and that the reproduction cost of the building thereon would be about $9,000. One of the properties was sold at a foreclosure sale and the petitioner received nothing on account thereof. The two properties were taken in on the deal for $14,000 ($32,000 less mortgages of $18,000). The two witnesses above mentioned and also Adaskin, one of the trustees of the petitioner, testified that the fair market value of the property was not in excess of $10,500 for each piece. This, less the amount of the mortgages, makes the petitioner's equity worth not more than $1,500 for each piece. We therefore find that the value of the real estate equities received by petitioner was $3,000.

In determining the profit upon the transaction the notes and the real estate equities will be included at the values which we have hereinabove determined.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*