R. W. HALE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. T. HALE, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 67750, 67751. Promulgated April 9, 1935.

*Eugene Meacham, Esq.,* and *Knox B. Phagan, C. P. A.,* for the petitioners.

*B. M. Coon, Esq.,* and *J. W. Smith, Esq.,* for the respondent.

#### OPINION.

ARUNDELL: These proceedings, consolidated for trial, involve deficiencies in income tax for 1929. In the case of R. W. Hale, the deficiency determined by the respondent is in the amount of $1,166.72, and in the case of W. T. Hale, Jr., $4,802.15.

The petitioners allege error in the respondent's refusal to allow a deduction for a claimed loss in connection with the sale of stock and in his refusal to allow as a capital loss the amount of loss sustained in connection with the sale of land. A stipulation of facts and certain exhibits were offered at the trial as the entire evidence of the parties.

The petitioners are brothers and for many years have been engaged in the grain business in Nashville, Tennessee, as partners in the firm of J. R. Hale & Sons. On June 6, 1929, petitioners each purchased 500 shares of North American Aviation Corporation stock at a cost

of $16.50 per share. On June 29, 1929, they sold the entire block of stock consisting of 1,000 shares to their sister, Lura Hale, for $16,500, which was the cost price to them, subject however, to a written guarantee evidenced in a letter addressed to her and signed by petitioners. The pertinent parts of the letter read as follows:

We agree to protect you against any loss which may result when you sell this stock, this guarantee to include the interest on the money while the stock is being held by you, with the understanding, however, that any cash dividends received by you are to be credited against any loss sustained. In case of loss we each agree to assume one half of said loss. Your account on the books of J. R. Hale & Sons has been charged this date with $16,500.00 representing the cost to you of this stock. This guarantee is good only for a period of one year from this date.

Lura Hale paid for the stock by having her account with J. R. Hale & Sons charged with the sum of $16,500. At that time she had a credit balance with the firm of $42,066.42. The respondent concedes that the sale was *bona fide* in every way. On December 13 and 14, 1929, Lura Hale sold the shares of North American Aviation Corporation stock for $4,897.50, thereby suffering a loss. Upon written demand being made by Lura Hale each petitioner paid to her, pursuant to the terms of the guarantee, one half of the loss plus interest in the amount of $470.26, a total in each case of $6,036.38. Payment was made by appropriate credit entries during the year 1929 to Lura Hale's account in the books of J. R. Hale & Sons.

The reason advanced by respondent for disallowing the deductions is that the transactions were not entered into for profit, as required by the revenue act. As we understand respondent's reasoning it is this: The sale of the shares of Aviation stock being at cost, there could be no possibility of profit, and as the sister would get the benefit of any advance in the market the brothers only stood to lose if the stock went down. Respondent's position is based on the theory that the transaction which resulted in the loss in each case was the sale to Lura Hale. That was only one of several steps, all of which can and must be retraced to find the origin of the transaction. We thus go back to June 6, 1929, when the stock was acquired by petitioners. That acquisition marked the inception of a "transaction entered into for profit" within the meaning of the statute. The principle of relation back to inception is fundamental in the tax statutes. In order to determine gain or loss the amount realized is compared with the basis, and the basis is a figure determined as of the time of acquisition—with a few exceptions, as, for instance, acquisition prior to March 1, 1913. Following a transaction through, it is ordinarily ended and gain or loss computed when property is sold. But there are exceptions to that rule. Under the statute the amount of gain is the "amount realized" in excess of the basis and

the amount of loss is excess of the basis over the "amount realized." Sec. 111, Revenue Act of 1928. In the present case, when at the end of the year the taxpayers cast up their accounts they found that the amount realized after making good this guaranty was less than the basis. Consequently they suffered a loss in 1929 arising out of a transaction entered into for profit, which loss is an allowable deduction. We need not, and do not, decide what the answer would be had the guaranty been satisfied in a later year. These cases are distinguishable from *Phillips Lee Goldsborough*, 18 B. T. A. 181; affd., 46 Fed. (2d) 432, and similar cases cited by respondent. In the *Goldsborough* case the taxpayer merely guaranteed another against loss on a transaction in which the taxpayer himself took no part. The taxpayer there did not enter into a transaction for profit.

The second issue grew out of the following transaction. During the year 1925 the petitioners sold an orange grove in Polk County, Florida, for the sum of $60,000. Full fee title was transferred to the purchaser upon the payment of $20,000 in cash and $40,000 in notes secured by a first mortgage. The respective petitioners each reported their pro rata share of their profit upon this transaction in 1925, and paid the tax thereon. Upon maturity of the notes in 1927 the maker, although financially able to pay, refused to do so. During the year 1929, suit to collect in the amount of $22,418.24 was instituted in the Federal District Court for the Northern District of Ohio, Eastern Division. Prior to judgment and during the taxable year 1929, a settlement was agreed upon which resulted in a loss to each petitioner in the amount of $7,497.22.

The respondent concedes the deductibility of the loss suffered by each petitioner, but asserts that it is allowable only as a bad debt. Petitioners now ask that the deduction be allowed as a capital net loss. Section 101 (c) (2) of the Revenue Act of 1928 provides: "'Capital Loss' means deductible loss resulting from the sale or exchange of capital assets." The petitioners did not sell or exchange the mortgage notes, and consequently an essential condition expressly required by the statute has not been met and no capital loss has been suffered. Cf. *Mont S. Echols*, 24 B. T. A. 1127; affd., 61 Fed. (2d) 191; *John H. Watson, Jr.*, 27 B. T. A. 463. The sale of the orange grove property was a deferred payment sale within the meaning of article 354 of Regulations 74, and the loss sustained by reason of the failure to collect the notes given is a bad debt under the provisions of article 193 of the same regulations. The respondent has so allowed it and we think his action is correct.

*Decision will be entered under Rule 50.*