VANCOH REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52340. Promulgated January 17, 1936.

*J. R. Little, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

922

McMahon: It has been repeatedly held by the Board and the courts that where the books of a taxpayer, engaged in the business of making mortgage loans, are kept on a cash receipts and disbursements basis, discounts or commissions on such mortgage loans deducted from the principal of such loans at the time made constitute income in the year the notes secured by mortgage are either paid in full or sold. *Cosmopolitan Bond & Mortgage Co.*, 30 B. T. A. 717, and cases relied on therein, dismissed on motion of the Commissioner, 77 Fed. (2d) 994; *Commissioner* v. *Central Republic Trust Co.*, 75 Fed. (2d) 708; *Helvering* v. *Martin-Stubblefield, Inc.*, 71 Fed. (2d) 944—both affirming unpublished memorandum decisions of the Board.

Where the books of a taxpayer engaged in the business of making loans are kept on an accrual basis, it has been held that discounts or commissions deducted from the principal of the loans at the time such loans are made constitute income in the year the loans are made. *Columbia State Savings Bank*, 31 B. T. A. 685, and cases relied on therein.

As appears from our findings in the instant proceeding, on the extension or renewal of a loan a new note and deed of trust was executed and the commission or discount charged for each such extension was paid in cash or was added to the unpaid principal of each loan, the unpaid principal representing in part cost and in part unrealized or unearned discount. The respondent included the amount of such unrealized discount in taxable income in the year the extension or renewal was made. Since each extension or renewal was in effect a new loan made by petitioner, on authority of the principle of *Columbia State Savings Bank*, *supra*, this action of respondent is approved.

In the instant proceeding the petitioner purchased existing loans through brokers at a discount. The petitioner contends that, although its books were kept on an accrual basis, no part of the discount should be included in income until the entire cost of each loan has been paid in full, since it had no reasonable assurance that the notes would be paid in full or that the discounts at which such notes were purchased would be recovered. In so far as the record discloses the loans purchased were all definitely fixed obligations of the borrowers or makers of the notes and mortgages and were not subject to any contingency of payment before due date or otherwise. The possibility of nonpayment of a debt is inherent in every obligation to pay but this does not change a fixed obligation to pay into a con-

tingent liability. *Columbia State Savings Bank, supra.* While the principle of *Higgins Estate, Inc.*, 30 B. T. A. 814, cited by the petitioner, that an item is accruable when events have occurred necessary to fix the liabilities of the parties and the amount thereof is applicable here, that case otherwise is distinguishable. Payment of the mortgages involved herein, in so far as shown by the evidence, was not contingent upon any future event as were the payments under the contract involved in that case. Furthermore, the loans were purchased by the petitioner here with the expectation of payment in full.

*Great Northern Railway Co.*, 8 B. T. A. 225, 269; *Turner Falls Power & Electric Co.*, 15 B. T. A. 983, 992; *Sowers Manufacturing Co.*, 16 B. T. A. 268, 274; and *Oregon Terminals Co.*, 29 B. T. A. 1332, cited by the petitioner, are distinguishable on the facts. It is therein stated that a taxpayer on an accrual basis is not required to report as income that which in all probability may never be received. There is no evidence here, as there was in such cases pertaining to the items therein involved, that the mortgage loans held by the petitioner were uncollectible or that payment thereof in the future at the time fixed in the mortgage notes was highly improbable.

Discount deducted from the principal of a mortgage note by a mortgagee on the accrual basis, as in the case of *Columbia State Savings Bank, supra*, is in substance a commission charged for services performed in the making of the loan and is earned when such services are performed. Having been earned and the obligation of the borrower therefor having been established by the execution of the note and mortgage, the commission, where the books are kept on the accrual basis, is accruable on the books as income when the loan is made. The interest charged on the loan represents payment by the borrower for the use of the money loaned and is payable so long as the loan is unpaid. Here the petitioner did not perform any services in the making of these loans. It purchased loans made by others and paid therefor the principal of the note less an agreed percentage thereof, the difference between the face value and the amount paid being the discount. In purchasing a mortgage loan at a discount it acquired the fixed obligation of a third person to pay an amount in excess of the amount paid therefor by petitioner, the excess representing the discount allowed to petitioner. The discount is paid by the borrower or the maker of the note as a part of his principal obligation. Such discount, like interest, is earned with the lapse of time. The amount paid upon the purchase of a mortgage loan represents as a practical matter the present value of an obligation to pay in the future, which, in part, is based upon the extent of the unexpired term

of the mortgage note, the financial responsibility of the obligor, the adequacy of the security, and the supply thereof and demand therefor. The undisputed proof shows that competition and the risks of the business were factors which affected the amount of the discount. The difference between the present value or purchase price and the face value of the obligation or note represents the discount. As the maturity of the obligation draws nearer, the value ordinarily increases. As the value increases with the lapse of time and the approach of the maturity date, the discount is being earned. Hence, where books are kept on an accrual basis, the discount should be accrued as thus earned, whether paid or not. As stated in *Chicago Acceptance Co.*, 12 B. T. A. 150, 152, only the amount of discount actually earned in each taxable year should be included in the taxable income of that year. By this method the greater risk involved in the business of dealing in second mortgages is recognized. Cf. *Columbia State Savings Bank, supra.*

In *Shafpa Realty Corporation,* 8 B. T. A. 283, the taxpayer, in 1920, sold a building and received in part payment a second mortgage with a face value of $300,000. For the purpose of arriving at the profit or loss sustained from the transaction in 1920, the taxpayer and the Commissioner agreed upon the market value of the second mortgage at $240,000. During 1921 the mortgagor made a payment of $10,000, which the taxpayer considered as a return of principal, and the Commissioner held that $2,000 of the $10,000 represented income. The Board held that, since the Commissioner, in computing the gain, discounted the mortgage 20 percent, only 80 percent of the face value represented the basis for computing the gain upon the payments made on the mortgage, that each payment made was a payment on the face of the mortgage, and that 80 percent thereof represented a return on the principal and 20 percent a realization of discount or of income. It is obvious that this case is distinguishable from the instant proceeding on the facts. The taxpayer therein was not engaged in the business of buying and selling mortgage loans at a discount, and it does not appear whether the books were kept on the accrual basis or cash receipts and disbursements basis. *Missouri Life Insurance Co.* v. *Helvering*, 78 Fed. (2d) 778, and *Prudential Insurance Co. of America*, 33 B. T. A. 332, are distinguishable.

The respondent determined the amount of discount includable in taxable income for each year by allocating thereto a certain prorata portion of each payment of principal received by the petitioner. This method is not correct where the books are kept on the accrual basis, as the discount is accruable as earned and not as paid and

some of the payments in one year allocated to discount may be applicable to discount earned and accrued as income in a prior year. His computation of the amount of discount includable in income for each year involved is therefore disapproved, and a recomputation must be made under Rule 50.

As to the commissions earned by the petitioner on account of endorsing loans of its clients made at banks, it appears from the evidence that the petitioner received payment of its commissions by checks or time certificates, that it endorsed the checks or time certificates, and that such time certificates or checks covering the commissions were held by the banks merely as additional security or collateral for the loans. Such certificates or checks were held by the bank in the name of the petitioner and belonged to the petitioner. Such commissions represented income when the loans were made by the bank and were properly accruable on petitioner's books of account as income in the year the endorsements were made. That petitioner permitted the bank to retain such items as security for the payment of the loans has no bearing upon the character of the payments as income. The action of respondent in so treating these commissions is therefore approved.

The amounts of the unrealized discounts on extensions or renewals and commissions for endorsing loans to be added to income have been stipulated and in the recomputation under Rule 50 effect will be given to such stipulation in accordance with our conclusions herein pertaining to such discounts and commissions.

No evidence was adduced by petitioner pertaining to the amount of $1,574.73 representing "Loss on foreclosures" in 1926 as adjusted by the respondent. The adjustments pertaining to this item must therefore be approved.

In 1927 the petitioner bid in three properties on foreclosure. It contends that the loss to which the petitioner is entitled on these transactions is reflected in the net loss of $5,372.25 reported in its return and disallowed by the respondent. There is no evidence to show how the petitioner computed such net loss. In the revenue agent's report (respondent's Exhibit A) it is stated, in substance, that the reported loss on sale of foreclosed property in the amount of $5,372.25 was disallowed on account of erroneous manner of computation, and that a recomputation had been made and the amount of $17,886.47, representing "Profit on Resale of Foreclosed Property" substituted therefor. The petitioner claims that it is entitled to a loss deduction on these transactions of the difference between the balances unpaid on the loans of $7,540.06 and the bid price of $1,500,

or $6,040.06. Under article 153, Regulations 69,[1] a deficiency on foreclosure may be deducted as a bad debt for the taxable year in which it is ascertained to be wholly or partially worthless and charged off; and in addition a loss may be deducted for the difference between the fair market value of the property and the amount of the face value of the obligations of the debtor which are applied to the purchase or bid price, to the extent such obligations represent capital or an item the income from which has been returned. A mortgagee may foreclose the mortgage upon default or bring suit upon the note or may foreclose and bring suit on the note at the same time. In O. D. 687, 3 C. B. 166, it is stated that:

* * * since the mortgagee may maintain an action against the mortgagor for the amount of the debt, it is not sufficient, in order to deduct the amount as a bad debt that he show only a foreclosure of the security as the mortgagor may be solvent and the debt collectible; but he must also show that legal action against the mortgagor resulted in no recovery, or that such action would in all probability not result in the satisfaction of execution on a judgment.

No evidence was adduced as to whether the unsatisfied balance could be collected without a deficiency judgment, as to whether or not a deficiency judgment could have been or had been obtained, as to whether or not such deficiency judgment, if any, was uncollectible, or as to any other essential facts bearing upon the deductibility of the loss, if any, except the amount of the bid price, $1,500, the total amount of the indebtedness remaining undischarged, $7,540.06, and the total of the unrealized discounts, $1,180.50. There is no showing that the unrealized discounts had been theretofore reported as income. Since the respondent disallowed the claimed losses, the burden of proof rested upon the petitioner. The evidence is insufficient to overcome the prima facie correctness of the respondent's determination.

The petitioner contends that it contracted to pay Julius Van Raalte as compensation a certain percentage of its net earnings "*be-*

---

[1] ART. 153. *Uncollectible deficiency upon sale of mortgaged or pledged property.*—Where mortgaged or pledged property is lawfully sold (whether to the creditor or another purchaser) for less than the amount of the debt, and the mortgagee or pledgee ascertains that the portion of the indebtedness remaining unsatisfied after such sale is wholly or partially uncollectible, and charges it off, he may deduct such amount (to the extent that it constitutes capital or represents an item the income from which has been returned by him) as a bad debt for the taxable year in which it is ascertained to be wholly or partially worthless and charged off. In addition, where the creditor buys in the mortgaged or pledged property, loss or gain is realized measured by the difference between the amount of the face value of those obligations of the debtor, which are applied to the purchase or bid price of the property (to the extent that such obligations constitute capital or represent an item the income from which has been returned by him) and the fair market value of the property. The fair market value of the property shall be presumed to be the amount for which it is bid in by the taxpayer in the absence of clear and convincing proof to the contrary. If the creditor subsequently sells the property so acquired, the basis for determining gain or loss is the fair market value of the property at the date of acquisition.

Accrued interest may be included as part of the deduction only when it has previously been returned as income.

*fore* deduction of *officers'* salaries" and that in computing such compensation the respondent used the net earnings *after* deduction of *officers'* salaries. (Emphasis supplied.)

The contract of employment as amended, entered into between the petitioner and Julius R. Van Raalte, provides that Van Raalte is to receive 25 percent to July 1, 1926, and thereafter 33⅓ percent, of the net earnings of the petitioner, net earnings to be determined by "deducting all legitimate expenses of whatever kind or character, including taxes", from the gross earnings and a sum equal to 6 percent per annum on petitioner's actual capital and surplus, except that "any salaries paid to *Stockholders*" of the petitioner shall not be taken into the accounting of deductible expenses. There is no reference whatever in the contract to *officers'* salaries. (Emphasis supplied.)

The evidence shows that the respondent, in computing the salary of Van Raalte for the years involved, used the net income of petitioner *after* deduction of *officers'* compensation. Under the contract of employment any salaries paid to *stockholders* should not be deducted from gross income for the purpose of determining Van Raalte's compensation. The evidence shows that the petitioner had three stockholders: Simon Van Raalte, Abe Cohn, and Lou Cohn; that Simon Van Raalte was the president of petitioner during the years involved; and the total amount of salaries paid annually to the *officers* of petitioner. There is no evidence as to the amount of salary paid annually to the stockholders of petitioner, or as to who the other officers of petitioner were during such years and whether such officers were stockholders also. The evidence merely discloses the total amount paid annually to *officers* as salary without identifying such officers as stockholders. In the absence of proof we can not assume that all the officers were stockholders and that the salaries paid to officers were, in fact, paid to stockholders. Under the contract of employment all "legitimate expenses of whatever kind or character, including taxes", except "salaries paid to *Stockholders*" were to be deducted from gross income to determine such compensation. (Emphasis supplied.) As officers' salaries come within the classification of "all legitimate expenses of whatever kind or character", which were deductible, and there is no evidence showing the amount of "salaries paid to Stockholders", which were not to be deducted, we are unable to determine that the respondent erred in deducting salaries of officers as an expense in determining the net income of the petitioner for the purpose of computing the salary of Julius R. Van Raalte, and therefore must approve his action in this respect. The compensation of Julius R. Van Raalte allowable as a deduction must, of course, be recomputed by the method used by the respondent upon the net

income of petitioner as recomputed under Rule 50 in accordance with this opinion.

*Decision will be entered under Rule 50.*