John H. S. Lee, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 97617.    Promulgated October 9, 1940.

*John H. S. Lee, Esq.*, pro se.
*F. R. Shearer, Esq.*, and *David Altman, Esq.*, for the respondent.

OPINION.

HARRON: Petitioner in 1931 was given a note for $40,000 by a client in payment for legal services. The note bore interest and interest notes were also given to petitioner by the client. In 1936 $40,000 was due on the underlying note and about $10,000 was due on the other notes for interest. Being unable to collect the sums due on the notes from the maker, Erna Zeddies, petitioner took steps to enforce collection by means of instituting foreclosure of the mortgage given by the maker to secure the notes. So much of the facts is without any doubt. There is conflict of opinion between petitioner and respondent in their respective briefs about other evidence and it will be necessary, therefore, to discuss the evidence. But before discussing the evidence and concluding what petitioner has proved or failed to prove, the question and the applicable rules of law should be set forth.

Petitioner contends that he sold the notes at the meeting held on November 25, 1936, at which he received $44,000. In his petition petitioner claimed that he sold the notes to the maker. In his brief petitioner wavers from the original contention that the alleged purchaser was the maker of the notes and indicates that his claim now is that the note was sold to the First National Bank of Chicago, to be held in escrow for the maker. Finally, petitioner argues in his brief that it is immaterial whether the alleged purchaser of the notes was the maker or the bank, because it was his intention to sell the notes. Petitioner claims that the alleged sale of the notes resulted in gain to him and that such gain is taxable only to the extent indicated by the terms of section 117 of the Revenue Act of 1936. Petitioner develops his computation of a capital gain from the alleged sale upon the premise that the note for $40,000 had a fair market value in 1931, when he received it, of $16,000; that he received in 1936 for that one note $40,000; and that his costs of collection were $650.95, the difference being $23,349.05, which petitioner reported in his income tax return as a capital gain on a capital asset held for more than 5 years. Petitioner, in his brief, passes over the additional $4,000 he received, presumably in compromise of the sum due for interest in excess of $8,820, having reported the $4,000 as interest, on his income tax return, and not having claimed any deduction for loss upon the interest notes. Petitioner

leaves out of the picture the notes for interest. He, somewhat inconsistently, alleges, however, that he sold a note for $40,000 plus accrued interest for $44,000. (This serves to indicate some of the difficulty in this case as to the facts and the petitioner's contentions.)

Respondent contends that, under the facts, petitioner received from the maker of the notes $44,000 under an agreement to settle the full indebtedness for principal and interest due, for that sum; that the payment to petitioner was made by or on behalf of the maker of the notes in extinguishment of the maker's indebtedness; and that, consequently, there was no sale of the notes. Respondent has determined that the payment resulted in petitioner's realization of ordinary income, the net amount taxable in 1936 being $23,349.05, petitioner having reported as ordinary income in 1931 the amount of $16,000 and having paid collection expenses in 1936 of $650.95.

Since petitioner held the note or notes for more than two years, there seems to be no real dispute as to their character as a capital asset. The only question is whether there was a sale of the note or notes in 1936.

Respondent contends that the question is controlled by the rule of the following cases: *Bingham* v. *Commissioner*, 105 Fed. (2d) 971; *Hale* v. *Helvering*, 85 Fed. (2d) 819; *James R. Stewart*, 39 B. T. A. 87; *Ralph Perkins*, 41 B. T. A. 1225.

The compromise of an obligation on a note by the maker is not a sale. The surrender of a note to its maker for cash due is not a sale to him, and whatever may have been property in the hands of the holder of notes simply vanishes when they are surrendered to the maker. *Bingham* v. *Commissioner, supra.* "If the full satisfaction of an obligation does not constitute a sale or exchange, neither does a partial satisfaction." *Hale* v. *Helvering, supra.* As for a sale: "A sale is a contract whereby one acquires a property in the thing sold and the other parts with it for a valuable consideration." Words and Phrases, Second Series, vol. 4, p. 437. But, where a note is surrendered to the maker upon his payment in full or in part of his obligation on the note, there is "no acquisition of property by the debtor, no transfer of property to him." *Hale* v. *Helvering, supra.* And, also, under Illinois statute, a negotiable instrument is discharged by payment in due course by or on behalf of the principal debtor, or when the principal debtor becomes the holder of the instrument at or after maturity in his own right. Art. VIII, ch. 98, Illinois Revised Statutes (1937), sec. 140 (1), (4).

The above are general rules of law.

The question here involves, therefore, these specific questions: Was the $44,000 paid to petitioner by or on behalf of Erna Zeddies in

order to discharge partially her indebtedness on the principal note and the interest notes? Were the notes surrendered for cancellation to Erna Zeddies or to her agent? If the evidence shows that the transaction which was carried out on November 25, 1936, was a compromise with the maker of the notes for less than their face value by payment by or on behalf of the maker, and that the notes were returned to the maker or to her agent for eventual surrender to her, then it must be held that there was no sale and respondent must be sustained. In any event the question should be determined here by considering the term "sale" in the ordinary meaning of that term. *Hale* v. *Helvering*, *supra.*

Petitioner admits that his position throughout has been motivated solely by his desire to "save money in taxes", which he conceives he may do by his treatment of the notes in question as a capital asset and by his interpretation of his surrender of the notes as a sale. Petitioner stresses greatly the factor that his expressed intent was to sell the note or notes. However, that is a question of fact. Petitioner has been exceedingly vague in his testimony on certain crucial facts, as the following indicates.

From the record it appears, not too clearly, however, that Erna Zeddies for several years had some dispute with the Lake Shore Country Club, which occupied the land in which she had a one-third interest that she mortgaged to secure her notes. The club leased the property under an option to purchase it. Over the period of the dispute Erna Zeddies was either unwilling to accept rents from the lessee or unable to collect them. Of this background no more is known. It appears that petitioner's threatened foreclosure aroused concern and Erna Zeddies wanted the suit dismissed. According to testimony of her attorney in this case (Schein), she instructed him to pay $44,000 to petitioner on her behalf, to obtain from him her notes, and to arrange for dismissal of the foreclosure on a stipulation. All of this strongly leads to the conclusion that there was a compromise of Erna Zeddies' outstanding indebtedness for $44,000, which was brought about because petitioner had begun enforced collection of the debt by instituting foreclosure of the mortgage given to secure the notes. It is reasonable to believe that petitioner must have had some negotiations concerning settlement for $44,000 prior to the meeting of November 25, but he professes complete ignorance of all details, such as how the sum of $44,000 was agreed to, on whose behalf the sum was paid, and what ultimate disposition was to be made of the notes which he agreed to surrender to the First National Bank. Petitioner's rather bald attitude at the hearing was that all he knew was that he was to receive $44,000, surrender the notes, and release

the trustee. He told Schein and others that he would insist that the transaction be a "sale" of the notes by him, but Schein told petitioner at the meeting that he was not interested in petitioner's "bookkeeping" processes. At the hearing Schein, who was a witness for respondent, testified that he did not "purchase" Erna Zeddies' notes for her. Petitioner has not proved that Erna Zeddies agreed to buy the notes, or that she instructed any party to buy the notes for her. When petitioner was asked on cross-examination whether the First National Bank bought Erna Zeddies' notes, he could not testify affirmatively that the bank had purchased the notes, but testified that he did not know whether the bank bought the notes and mortgage to hold until Erna Zeddies made a deal with the club, or whether she had borrowed some money from the bank and the bank was acting as her agent. On the other hand, Schein testified that it was his recollection that Erna Zeddies was to get the money by means not disclosed to him and that the notes and mortgage were to be deposited with the bank until the ultimate release of the mortgage was obtained. He was of the opinion that there may have been some temporary "escrow" deposit of the notes and mortgage in order to satisfy the club that the mortgage would be "released."

As for the source of the funds paid to petitioner, petitioner testified on direct examination that he received $40,000 from the bank and $4,000 by a check or draft from Erna Zeddies endorsed by her over to him. Petitioner was asked if it was not true that the club had been paying rents on the Lake Shore property in escrow during pendency of the dispute between Erna Zeddies and her father and uncle with the club. Petitioner testified that he did not know what the club had done with rents, but that they may have deposited them in escrow.

Petitioner has rested his case primarily upon his intent to make a sale of Erna Zeddies' note or notes. He called a witness who testified that he advised petitioner that he could sell the notes to the maker and report the transaction for income tax purposes as a sale of a capital asset. But petitioner has failed to prove conclusively that he sold the notes to anyone. Petitioner became exceedingly evasive under cross-examination, professing ignorance of all details. It is prerequisite to a sale that there be a buyer as well as a seller and that there be a meeting of minds as to the terms of the sale between seller and buyer. *Matteis* v. *United States*, 57 Fed. (2d) 999, 1001. The mere desire of petitioner to effect a sale does not make the transaction a sale. We are not concerned with the general question of whether petitioner *could have made a sale* of the note or notes to the maker under the laws of Illinois. The evidence strongly indicates that

the $40,000 was paid on Erna Zeddies' behalf in satisfaction of her obligation on her note for $40,000, and that the bank received her notes and the mortgage as a custodian or depository for ultimate surrender to her.

It is concluded that the sum paid to petitioner was paid on behalf of Erna Zeddies in full satisfaction of her indebtedness to petitioner and it is held that there was no sale of her note or notes. *Hale* v. *Helvering, supra; Bingham* v. *Commissioner, supra.* Petitioner realized net income from the transaction of $23,349.05, which is taxable as ordinary income.

*Decision will be entered for the respondent.*