ORANGE SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 104499.   Promulgated September 4, 1941.

*Charles M. Trammell, Jr., Esq.,* for the petitioner.
*F. L. Van Haaften, Esq.,* for the respondent.

## OPINION.

ARUNDELL: The issues enumerated at the outset are considered here in their order and without restatement.

### Issue No. 1.

First for consideration is the basis for computing gain or loss on the settlement of the Beeman notes in the taxable year 1937. The value of the stock received in settlement, it is agreed, was $80,000; the division between the parties is the basis of the notes, whether $98,700, their face value, as contended by the petitioner, or $5,720, as argued by the respondent. As grounds for its contentions the petitioner claims now that the notes received by Giles in 1926 had a market value at that time equal to their face amounts, and that Giles was in error in failing to then report gain equal to the difference between the cost of the land and the total of the notes. Accordingly, it is contended, the proper basis of the notes in Giles' hands was $98,700, which is also the basis of the petitioner. Furthermore, since the Commissioner's agent became aware of the 1926 transaction before the statute of limitations had run against Giles and failed to compel him to report gain in 1926, it is argued that there is no ground for estoppel.

The respondent's answering arguments are that the notes had no fair market value in 1926 and, alternatively, that the petitioner may not now claim value for them since its transferor failed to report gain on the transaction by which he acquired them.

It seems clear that, if the notes had a fair market value in 1926, gain was realized by Giles then in the sum of the difference between the cost of the land sold, $5,720, and $98,700, the amount for which it was sold. *Thomas F. Prendergast, Executor*, 22 B. T. A. 1259; *Mer-*

*ritt J. Corbett*, 15 B. T. A. 698; affd., 50 Fed. (2d) 492; *Wray-Dickinson Co.*, 6 B. T. A. 269. The petitioner's evidence is presented in an attempt to show such market value. That evidence, however persuasive in the absence of contradictory proof, need not be considered in the view which we take of this case.

The petitioner's transferor, Giles, in 1926, by his failure to report gain on the sale of the land, in effect declared that the notes had no fair market value at that time. This was a determination·of fact which he was in a position to make accurately. Responsibility for the error, if indeed there was error, may not be shifted to the Commissioner by a showing that an agent became casually aware of the sale and accepted Giles' treatment of the notes as having no fair market value. In some cases the Commissioner's knowledge and investigation of the facts becomes as broad as the taxpayer's, and his failure to compel adjustment makes the error his as well as the taxpayer's. In those instances we have refused to apply any theory of estoppel. *R. E. Baker*, 37 B. T. A. 1135; affd., 115 Fed. (2d) 987; *Estate of William Steele*, 34 B. T. A. 173. See also *Helvering* v. *Williams*, 97 Fed. (2d) 810; *Hawke* v. *Commissioner*, 109 Fed. (2d) 946. The facts in the instant case do not extend so far.

Having thus dealt with the Government on the position thereby assumed by him, Giles may not now repudiate it in order to reap some tax benefit. Some measure of consistency must be required in transactions such as the present, where a conclusion once reached has a continuing effect in the determination of tax liability in later years. See *Larkin* v. *United States*, 78 Fed. (2d) 951; *Crane* v. *Commissioner*, 68 Fed. (2d) 640; *Askin & Marine Co.* v. *Commissioner*, 66 Fed. (2d) 776. See also *Dallas Title & Guaranty Co.*, 119 Fed. (2d) 211; *Doneghy* v. *Alexander & Jones*, 118 Fed. (2d) 521; *Robinson* v. *Commissioner*, 100 Fed. (2d) 847. See *Ruth B. Rains*, 38 B. T. A. 1189; *Commissioner* v. *Farren*, 82 Fed. (2d) 141. See also *Stearns Co.* v. *United States*, 291 U. S. 54.

The present case, so far considered, resembles closely and, we think, is largely controlled by *Alamo National Bank of San Antonio, Executor*, 36 B. T. A. 402; affd., 95 Fed. (2d) 622; certiorari denied, 304 U. S. 577. The taxpayers there·in 1921 received in the liquidation of a corporation, in which they owned stock, a franchise to bottle and sell Coca-Cola in a specified territory. Liquidating dividends were reported in their returns, but neither the books of the corporation nor the returns made any mention of the franchise. The taxpayers did not pay any tax for the year 1921 on account of receiving the franchise as a liquidating dividend. In 1931, in reporting gain on the sale of that franchise, they sought to use as a basis its claimed market value in 1921. We pointed out there that the taxpayers, by

their failure to report the receipt of the franchise in 1921, had taken the position that the franchise had then no fair market value. Having taken that view, the taxpayers were required to adhere to it in all of its tax consequences. In those circumstances, we declined to pass on whether the franchise had market value in 1921 and held that the taxpayers must use their own previously declared valuation of zero as a basis.

The Circuit Court of Appeals for the Fifth Circuit, in affirming that result, said:

* * * In income taxation what is done in one tax year is sometimes projected into another where the same fact must govern. There being continuity, there ought to be consistency in treatment. If, for instance, a sale is made on deferred payments, and the taxpayer returns it as an installment sale, charging himself only with the cash collection, and the Commissioner acquiesces, the taxpayer could not in later years refuse to pay on the deferred collections by asserting that he stated the facts wrongly in the first instance and ought to have paid on all then, unless he should offer to correct also the first tax settlement. * * *
* * * Whether it be called estoppel, or a duty of consistency, or the fixing of a fact by agreement, the fact fixed for one year ought to remain fixed in all its consequences, unless a more just general settlement is proposed and can be effected. * * *

The petitioner argues in part that this reasoning can not apply since Giles' failure to report gain in 1926 was based on his belief that the transaction constituted an installment sale on which no gain need be reported in that year, as provided in section 212 (d) of the Revenue Act of 1926 and articles 44 and 45 of Regulations 69. Both parties are agreed that the sale did not fall within these provisions of the law. See *Thomas F. Prendergast, Executor, supra; Walnut Realty Trust*, 23 B. T. A. 850; G. C. M. 12148, C. B. XII-2, p. 57. Cf. *E. M. Funsten*, 44 B. T. A. 1166. Giles, however, made no report whatsoever of the transaction in 1926, and the only evidence on this point is that found in a letter of protest written by petitioner in 1938. The statement there made is none too clear, but it rather indicates that Giles considered the notes as having no fair market value in 1926 and for that reason failed to report the transaction.

Having reached that conclusion, however, there remains the question of whether the present taxpayer is compelled to adhere in 1937 to a basis determined by its transferor's act in 1926. We think that it must be held bound here as Giles would be bound. The petitioner received conveyance of the notes in a tax free transaction within section 112 (b) (5) of the Revenue Act of 1928. Its basis became that of its transferor's. See 113 (a) (8). That basis we have found to be the basis of the land to Giles. The petitioner literally "stepped into the shoes" of its transferor and must assume all the consequences

which attach. *Portland Oil Co.* v. *Commissioner*, 109 Fed. (2d) 479; *Birren & Son, Inc.* v. *Commissioner*, 116 Fed. (2d) 718. The first cited case, indeed, is very similar to the present case and, we think, is largely determinative of the issue here. The taxpayer there acquired in 1930 an installment contract in a tax free transfer. Its transferor had acquired the contract in 1929 as the result of a sale in that year. The contract provided for a number of payments, beginning on January 1, 1930. In reporting the 1929 sale the transferor treated the transaction as an installment sale and consequently reported no gain. The debtor paid up the contract in 1931 and in reporting gain on the settlement the taxpayer claimed that the transferor made a completed sale in 1929, at which time all gain should have been taxed. The taxpayer accordingly claimed a "stepped-up" basis. The court held, in these circumstances, that the transferor would be "precluded from asserting, after the Statute of Limitations has run as to 1929, that the sale actually took place in 1929." It ruled, further, that this applied as well to the transferee-taxpayer:

If Section 113 (a) (7) or 113 (a) (8) requires the petitioner to take over the contract on the basis as it would be in the hands of the transferor, Bu-Vi-Bar, then petitioner is in no better position than Bu-Vi-Bar to assert that the sale to the Continental Oil Company took place in 1929. This conclusion involves no judicial disregard of the "corporate fiction;" nor is it strictly a case of applying an estoppel against an innocent third person who was not responsible for the representation upon which the estoppel was founded. The conclusion follows, rather, from the statutory requirement of Section 113 that in certain cases where the transferor retained control, as defined, of the corporation acquiring the property, the transferee steps into the shoes of the transferor so far as the tax basis for the property is concerned.

This reasoning applies with equal force here. The basis "as it would be in the hands of the transferor" is clearly the cost of the property to Giles. The petitioner may not treat it otherwise. Cf. *Jamieson* v. *United States*, 10 Fed. Supp. 321. Accordingly, the respondent's action on this first issue must be sustained.

*Issue No. 2.*

The payment of $5,000 to James L. Giles by petitioner in 1937, for particular services rendered over a period of some seven years, is questioned by the respondent as unreasonable and excessive compensation. Proof is made by the petitioner of the extended and important character of the services rendered, consisting of securing the settlement of a long standing and overdue indebtedness owed by Beeman to the petitioner. It is shown that the payment of $5,000 special compensation for these activities was approved by the stockholders of the petitioner.

In view of these facts there appears to be no basis for holding unreasonable the sum paid to Giles for these activities. Salary as general manager was paid to him, it is true, during the taxable year, but the compensation in question was for services of a special nature rendered over several years. Such extra compensation has frequently been approved when the extent and success of the efforts appear reasonably to warrant it. *Heywood Boot & Shoe Co.* v. *Commissioner*, 76 Fed. (2d) 586; *Guarantee Liquid Measure Co.*, 20 B. T. A. 758; *Central Wisconsin Creamery Co.*, 15 B. T. A. 396. Accordingly, our decision on this issue must be for the petitioner.

### *Issue No. 3.*

The final issue is whether interest paid by petitioner during both of the taxable years on loans negotiated by another is deductible by petitioner when it is shown as to certain of the loans that petitioner received properties representing proceeds of the loans under an agreement to pay the interest and as to the remaining loans that they were negotiated at petitioner's request, and that petitioner received the borrowed funds and agreed to pay the interest arising thereon.

The principle that interest to be deductible must be paid on petitioner's own obligations is not here questioned. *Helen B. Sulzberger*, 33 B. T. A. 1093; *Morris Plan Co. of Binghamton*, 26 B. T. A. 772. The efforts of the petitioner seem bent toward showing that the payments here in question were made pursuant to its own obligations, and, indeed, we have found that the petitioner gave its promise to pay the interest in question. But it is a different thing to agree to pay interest on the debt of another and to be required to pay interest on one's own debt. Only in the latter case may the interest deduction be allowed. *William H. Simon*, 36 B. T. A. 184. Here, the petitioner was not indebted to the recipient of the interest, the insurance company, nor, so far as we have been shown, to Giles. The receipt of the properties representing loans made prior to its organization and of the proceeds of the loans made thereafter did not create an indebtedness; they appear to have been capital contributions in each case. Whether the payment of interest, promised by the petitioner as incidents of these transfers, be regarded as consideration for the transfer and thus a capital outlay, see *Automatic Sprinkler Co. of America*, 27 B. T. A. 160, or as a return on petitioner's capital investment, see, e. g., *Greensboro News Co.*, 31 B. T. A. 812, it is clear that they were not paid on an indebtedness of the petitioner and, in consequence, their deduction may not be allowed.

Accordingly, our decision on this issue must be for the respondent.

*Decision will be entered under Rule 50.*