E. D. RIVERS, JR., and MARIE BIE RIVERS, PETITIONERS *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6990–65.    Filed March 22, 1968.

*Hubert E. Ulmer*, for the petitioners.
*David S. Meisel*, for the respondent.

## OPINION

The first question presented is whether petitioner received taxable income during the years in question upon receipt of the payments on the notes issued in 1951. The parties concede that the 1951 transactions, from which the promissory notes arose, were nontaxable transfers pursuant to section 112(b)(5) of the 1939 Code,[3] the statutory predecessor to section 351 of the 1954 Code. Pursuant to section 113(a)(6), petitioner's basis in the stock and notes received from the transferee corporations, WEAS and WJIV, was the same as the basis of petitioner's property transferred to those corporations, i.e., $90,154.73 as to WEAS and $53,075.48 as to WJIV. After allocating $10,000 to the stock of each corporation, petitioner's basis in the WEAS note was $80,154.73 and his basis in the WJIV note was $43,075.48, although the face amount of the WEAS note was $240,000 and the face amount of the WJIV note was $120,000.[4] Although petitioner's basis in each note was less than its fair market value, petitioner reported no income from the monthly note payments and now contends, without recitation of any judicial authority, that he derived no taxable income upon the receipt of the note payments because the nontaxable transfer, pursuant to which the notes were acquired, did not permit the transferee corporation to take a stepped-up basis. We agree with petitioner that where property is acquired by a corporation in a transaction to which section 112(b)(5) applies, the basis of the property in the hands of the corporation is the same as it was in the hands of the transferor. Sec. 113(a)

---

[3] SEC. 112(b). EXCHANGES SOLELY IN KIND.—

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation * * *

[4] Petitioner has failed to suggest that the fair market value of each note was less than its face amount and we find no evidence in the record to support such a finding.

(8). However, to conclude from that fact that petitioner will never receive taxable income upon payment of the notes received in such a transaction is without legal foundation. Under both the 1939 and 1954 Codes, gain is defined as the excess of the amount realized from the sale or other disposition of property over its adjusted basis. Sec. 111(a), I.R.C. 1939; sec. 1001(a), I.R.C. 1954. The "amount realized," where no money is received, is by definition the fair market value of the property received, sec. 111(b), I.R.C. 1939; sec. 1001(b), I.R.C. 1954, and since in this case no money was received by petitioner at the time of the transfer in 1951, the "amount realized" was the fair market value of the stock and notes received, i.e., their face amount.[5] Inasmuch as the fair market value of the notes exceeded petitioner's basis therein, petitioner realized a gain to the extent of the difference. Section 112(b)(5) reflects the well-established intent of Congress to foster tax-free business reorganizations of the very type which occurred in this case by postponing recognition of gain. However, there is no suggestion in that Code section, or any other, that Congress intended to thereby eliminate all tax to a transferor in such a transaction. The fact that section 113(a)(6) specifically provided a basis for the property received by the transferor in such a transaction convinces us of the error in petitioner's argument. It follows that since the bases of petitioner's notes were less than their fair market value, petitioner derived taxable income on the receipt of the note payments. We must therefore decide whether petitioner was required to pay a tax on the gain only after he had fully recovered his basis or, on the other hand, whether some portion of each monthly payment was taxable as gain.

Respondent contends, as he has in the past, *Victor B. Gilbert*, 6 T.C. 10, 13 (1946), that receipt by petitioner of the monthly note payments, beginning in May 1951, was attributable entirely to recovery of petitioner's basis in the notes, with the result that by sometime in 1958, the first tax year in question, petitioner had recovered the entire basis in each note. From this respondent contends that the entire portion of all subsequent note payments were attributable solely to income. In *Darby Investment Corporation*, 37 T.C. 839 (1962), affd. 315 F.2d 551 (C.A. 6, 1963), we recognized the long-standing principle that:

where evidences of indebtedness such as negotiable bonds, notes, and mortgages payable in installments with interest are purchased at discount, and where when purchased they have an ascertainable fair market value less than the amount due and payable thereon, the payments each include, after deduction of interest, realized discount income in proportion to the difference between the taxpayer's cost and the principal balance due upon the face of such instruments at the date of taxpayer's purchase thereof. *William A. Tombari*, 35 T.C. 250; *Phillips v. Frank*, 185 F. Supp. 349 (W.D. Wash.); *Victor B. Gilbert*, 6 T.C. 10; *Vancoh Realty Co.*, 33 B.T.A. 918; *Shafpa Realty Corporation*, 8 B.T.A. 283; *Florence L. Klein, et al.*, 6 B.T.A. 617.

[5] See fn. 4, *supra*.

It is therefore established in the discount note cases that where the cost basis of a note is less than the amount due and payable thereon, the difference, or discount, is to be allocated to each installment payment reported as discount income. In the instant case, while the notes were not purchased at a discount, there also exists a disparity between the holder's basis and the amounts to be received on the note. For this reason, we think it follows that each principal payment in retirement of the notes, after deduction of interest, must be allocated in part to return of petitioner's basis and in part to the receipt of income.[6]

Respondent strongly contends, however, that since petitioner never reported any income from the notes, excepting interest income, we must invoke a doctrine of quasi-estoppel, and hold that as to each note, the entire monthly payment, beginning with the May 1951 payment, was attributable solely to the recovery of petitioner's basis. Thus, when the entire basis in each note was recovered sometime during 1958, all subsequent principal payments would be taxable, in their entirety, as income. In support of his position, respondent cites the cases of *Alderson* v. *Healy*, an unreported case (D. Mont. 1965, 15 A.F.T.R. 2d 536; 65–1 U.S.T.C. par. 9239), and *Orange Securities Corp.* v. *Commissioner*, 131 F.2d 662 (C.A. 5, 1942), affirming 45 B.T.A. 24 (1941).

While we agree with respondent that such treatment of the note payments would best protect the Federal revenue, we do not think a doctrine of quasi-estoppel is applicable here. That doctrine, as relied upon in the cited cases, merely imposes upon the taxpayer the duty of taking a consistent position with regard to similar facts and transactions in different years where inconsistency would work to the benefit of the taxpayer and to the detriment of the tax revenue. In the instant case, however, petitioner has taken consistent positions. While he has never reported as income any portion of the monthly note payments, excepting interest, he continues to take the position that because of the nonrecognition provisions of section 112(b)(5) and the transferred, rather than stepped-up, basis required to be taken by the transferee corporation under section 113(a)(8), he has derived no income from the receipt of the monthly payments on the notes. While we consider petitioner's arguments on this point frivolous and completely lacking in judicial authority, we think it clear that his position has at all times been consistent and therefore application of a doctrine of quasi-estoppel is not warranted.

There remains for our determination the question whether the income portion of each monthly note payment received by petitioner during the years in question, 1958 through 1960, constituted ordinary

---

[6] To illustrate, the $1,000 monthly payment received from the WEAS note must, after deduction for interest, be allocated $80,154.73/$240,000, or approximately one-third to the return of petitioner's basis and $159,845.27/240,000, or approximately two-thirds to income.

income or capital gain. Assuming, without deciding, that the notes constituted capital assets in the hands of petitioner, it was still necessary that the collections thereon constituted a "sale or exchange" in order for petitioner to be entitled to capital gains treatment on the gain portion thereof. Sec. 117(a), I.R.C. 1939; sec. 1222, I.R.C. 1954. It is now well settled that if gain arises from the *sale* or *exchange* of a claim or chose in action, capital gains treatment results, whereas if the gain arises from the mere *collection* of a claim or chose in action, the gain is taxed as ordinary income. *Fairbanks* v. *United States*, 306 U.S. 436 (1939); *Mace Osenbach*, 17 T.C. 797 (1951), affd. 198 F.2d 235 (C.A. 4, 1952); *John H. S. Lee*, 42 B.T.A. 920 (1940), affd. 119 F.2d 946 (C.A. 7, 1940); *R. W. Hale*, 32 B.T.A. 356. (1935), affd. 85 F.2d 819 (C.A. D.C. 1936); *John H. Watson, Jr.*, 27 B.T.A. 463 (1932). In spite of the foregoing authority, petitioner contends that if gain resulted from the collection on the notes, that gain must be taxed at capital gains rates, relying on section 117(o). That section, as added to the 1939 Code by section 328(a) of the Revenue Act of 1951, ch. 521, 65 Stat. 452, provided as follows:

SEC. 117(o). GAIN FROM SALE OF CERTAIN PROPERTY BETWEEN SPOUSES OR BETWEEN AN INDIVIDUAL AND A CONTROLLED CORPORATION.—

(1) TREATMENT OF GAIN AS ORDINARY INCOME.—In the case of a sale or exchange, directly or indirectly, of property described in paragraph (2)—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(B) between an individual and a corporation more than 80 per centum in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren;

any gain *recognized* to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in subsection (j). [*Emphasis supplied.*]

(2) SUBSECTION APPLICABLE ONLY TO SALES OR EXCHANGES OF DEPRECIABLE PROPERTY.—This subsection shall apply only in the case of a sale or exchange of property by a transferor which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 23(l).

Section 328(b) of the Revenue Act of 1951 provided that the foregoing provisions "shall be applicable with respect to taxable years ending after April 30, 1951, but shall apply only with respect to sales or exchanges made after May 3, 1951." From this, petitioner concludes that:

such a transaction as the petitioners entered into [on April 1, 1951] would have had any gain treated as ordinary income if it had been entered into after May 3, 1951. This was thirty-three (33) days after petitioners' transaction. From this, it can be concluded that such transactions could only have resulted in capital gains if entered into on or before May 3, 1951.

Petitioner has failed to cite any judicial authority for this novel argument for the obvious reason that none exists. By its very language, section 117(o) applied to the situation where gain was "recognized

to the transferor from the sale or exchange of * * * property." As we have indicated above, since the notes in question arose out of a transaction governed by section 112(b)(5), any gain which may have been realized at the time of the transfer was not "recognized." Thus, the specific language of section 117(o) precludes its application to a situation like that which exists in the instant case. We think section 117(o) was intended to apply rather to gains which were "recognized" at the time of the sale or exchange, as, for instance, where a transferor received, in addition to stock or securities, "other property or money." Sec. 112(c), I.R.C. 1939; sec. 351(b), I.R.C. 1954.

Neither do we think the sale or exchange requirement is met under the special sections found in both the 1939 and 1954 Codes relating to the retirement of notes and other evidences of indebtedness by corporations. Sec. 117(f), I.R.C. 1939; sec. 1232(a), I.R.C. 1954. While those Code sections provide the "exchange" element to the payment of corporate indebtedness, in order for section 117(f)[7] to apply, the notes must have been issued "with interest coupons or in registered form." Similarly, for section 1232(a)[8] of the 1954 Code to apply, the notes, although not originally "issued with interest coupons or in registered form," must have been put in such form by March 1, 1954. Since we have found that the notes received by petitioner in 1951 were not issued with interest coupons nor in registered form, and were not put into such form by March 1, 1954, petitioner can derive no benefit from either of those Code sections.

Since petitioner has failed to prove the existence of a sale or exchange upon the collection of the notes, and since we have concluded that section 117(o) cannot apply to the facts in this case, we must hold that the income portion of each note payment received by petitioner during the years in question was taxable as ordinary income and not as capital gain.

*Decision will be entered under Rule 50.*

---

[7] I.R.C. 1939.

SEC. 117. CAPITAL GAINS AND LOSSES.

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

[8] I.R.C. 1954.

SEC. 1232. BONDS AND OTHER EVIDENCES OF INDEBTEDNESS.

(a) GENERAL RULE.—For purposes of this subtitle, in the case of bonds, debentures, notes, or certificates or other evidences of indebtedness, which are capital assets in the hands of the taxpayer, and which are issued by any corporation, or government or political subdivision thereof—

(1) Retirement.—Amounts received by the holder on retirement of such bonds or other evidences of indebtedness shall be considered as amounts received in exchange therefor (except that in the case of bonds or other evidences of indebtedness issued before January 1, 1955, this paragraph shall apply only to those issued with interest coupons or in registered form, or to those in such form on March 1, 1954).